May Term, 1846.

Coquillard
v.
Suydam.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

---

## Coquillard and Others *v.* Suydam.

A mistake having been made in an answer in chancery, as shown by the affidavits of the defendant and the writer of the answer, a supplemental answer was permitted to be filed.

A charge in a bill in chancery that the defendant had assented to a certain agreement is sufficiently denied by an allegation in the answer that he never had any knowledge of the agreement.

For a debt for goods sold and delivered, the remedy is at law.

A bill in chancery to subject lands to the payment of a debt must describe the lands with certainty.

If *A.* agree with *B.* to cause a debt due from *C.* to *B.* to be secured by a mortgage on certain lands of *C.*, and fail to perform the agreement, *B.'s* remedy for the breach is against *A.* by an action at law for damages.

The circumstance that *A.* authorized *B.* to fill up a blank in a mortgage from the former to *C.* with a description of certain lands, does not give *C.* (the blank not being so filled) a lien on the lands.

If a bill in chancery be founded on an agreement required by the statute of frauds to be in writing, and the agreement be denied by the answer, the agreement, though the statute be not pleaded, must be proved to be in writing.

A defendant in chancery not charged in the bill as an agent and with neglect of duty as such, cannot be made liable for negligence as an agent.

In mercantile agencies, and perhaps others, where the nature of the business requires the agent to keep various accounts of purchases and sales, or of receipts and expenditures, with his principal, he may be called upon by his principal, in chancery, for an account; but where the agency is for a single

transaction, in which no such accounts can arise, the remedy for a breach is exclusively at law.

A bill in chancery seeking relief as consequent on discovery, must allege the discovery to be indispensable to a recovery. And if the matter of which discovery is sought be denied by the answer, the bill cannot be sustained.

May Term,
1846.

COQUILLARD
v.
SUYDAM.

ERROR to the *St. Joseph* Circuit Court.

BLACKFORD, J.—This was a bill in chancery filed by *Suydam* against *Coquillard*, *Rush*, and *Henricks*.

The bill states that in *July*, 1838, *Henricks* and *Rush*, of *South Bend* in this state, were indebted to the complainant, resident in *New York*, in the sum of 3,122 dollars, for goods sold and delivered; that in the same month, the complainant's agent having come to *South Bend* to collect the debt, found that *Rush* was absent in the state of *Illinois*, but he met with *Henricks* and the defendant *Coquillard*; that *Coquillard* then promised the agent, in consideration that the complainant would forbear and give time to *Henricks* and *Rush* for payment of the debt, to wit, 12 months for 1,200 dollars, and 18 months for the residue, that he would get the debt secured by a mortgage on certain lands owned by *Rush*, and which would be ample security for the debt; that *Coquillard* then, also, informed the agent that he might return home, that he, *Coquillard*, would faithfully attend to the business, would see the debt well secured by mortgage on said lands, and would send the mortgage and the notes to be given for the debt, to the complainant in *New York*; and that the agent thereupon agreed to extend the time of payment as aforesaid, left the business with *Coquillard*, and returned home.

The bill further states, that *Coquillard* described the lands to be mortgaged only by some of their general features, for which reason the complainant could not describe those lands with certainty; but from *Coquillard's* having represented them to be owned by *Rush*, to be partially improved, and to be situate on the road leading from *South Bend* to *La Porte*, he believed them to be as follows: the S. E. quarter of the S. W. quarter of section 27, township 38 N. range 1 E.; the S. half of the S. E. quarter of the section, township, and range aforesaid; the S. W. quarter of section 26, township and range aforesaid; the E. half of the S. E. quarter of section 26, township and range aforesaid; the N. E. quarter of the N.

Tuesday,
May 26.

VOL. VIII.—4

W. quarter of section 35, township and range aforesaid; the E. half of the W. half of the N. W. quarter of section 35, township and range aforesaid; and that they were all situate in *St. Joseph* county, *Indiana,* and were owned and possessed by *Rush.*

The bill further states, that afterwards *Henricks,* with *Coquillard's* consent, went to *Illinois* and called upon *Rush* who assented to said agreement, and thereupon agreed to execute to the complainant a mortgage on the lands described by *Coquillard,* to secure the debt; that *Rush* thereupon executed to the complainant a mortgage to secure the debt, leaving a blank for a description of the lands, and authorizing *Henricks* to go to *South Bend* and there insert in the mortgage a description of the lands agreed upon as aforesaid to be mortgaged; that *Henricks* soon afterwards went to *South Bend,* and, with *Coquillard's* consent, and to defraud the complainant, filled up the blank in the mortgage, not with, a description of the lands, or any part of them, which had been agreed upon as aforesaid to be mortgaged, but with a description of four other tracts of land, three of which had been previously mortgaged by *Rush* for more than they were worth, and the fourth of which did not belong to *Rush,* as *Henricks* and *Coquillard* well knew, and that the mortgage, therefore, was of no value to the complainant; that *Coquillard* afterwards sent the notes of *Henricks* and *Rush* given for the debt, and the mortgage, to the complainant in *New York,* who received them, believing the mortgage to be on the lands which *Coquillard* had agreed to have mortgaged; and that *Henricks* and *Rush* were insolvent, but that, at the time the mortgage was executed, they were able to secure the debt, which was still unpaid.

The bill prays for a decree that the debt be paid within a certain time, and, in default of such payment, that the lands agreed as aforesaid to be mortgaged be sold to pay the same, &c., or that the defendants be decreed to pay the debt, and in default of such payment, that an execution issue, &c., and for general relief.

*Coquillard,* in his first answer, admits the agreement with the complainant's agent, in consideration as stated in the bill, to get a certain farm, lying on the *Michigan* road between

*South Bend* and *La Porte* and owned by *Rush*, mortgaged to secure the debt in question, and that he informed the agent that the farm was amply sufficient to secure the debt. He says the language he used, as near as recollected, to induce the agent to take the mortgage was, "that if he could get *Rush* to give him a mortgage on his farm, it would be sufficient to secure the debt." He admits that he told the agent he might leave the business in his hands and return home, and that he would see the debt well secured on said lands. He admits, also, that soon after said agent returned home, *Henricks*, with his assent, went to *Illinois* to get *Rush* to execute the mortgage; but that he only knows from hearsay what passed between *Henricks* and *Rush* on that occasion. He denies, that he advised the blank in the mortgage to be filled up as it was, and says that he only accepted the mortgage filled up by *Henricks* as the best thing he could do to secure the debt. He denies all fraud.

*Coquillard*, afterwards, moved the Court for leave to file a supplemental answer. The motion was founded on his own affidavit, and the affidavit of the person who drew the first answer. His own affidavit states that the answer does not convey his exact meaning; that he never promised to be responsible for the debt under any circumstances whatever; and that he is a *Frenchman*, and does not understand the *English* language except as it is used in ordinary conversation. The other affidavit states that the answer was written at night, whilst the writer had a sick person to attend to most of the time; that he is led to the belief that the language contained in one part of the answer does not contain the exact meaning intended by *Coquillard*; that he believes *Coquillard* intended to say, in that part of his answer, that if the agent would extend the time for payment of the debt to 12 and 18 months, and would take a mortgage on *Rush's* farm, which he represented to be worth 4,000 or 5,000 dollars, he would, if *Rush* would consent to mortgage it, attend to the business, and the agent might return home. The Court sustained the motion, and a supplemental answer was filed.

In this last answer *Coquillard* denies that he made the promise alleged in the bill, to get the debt secured. He says that he only agreed, out of friendship, to act as an agent to

do his best to have the debt secured; that he informed the agent that he believed *Rush* would give a mortgage on his farm, for which he thought *Rush* had a good title; and that he agreed to try to get *Rush* to do so. He admits that the blank in the mortgage was filled up with his consent; and says he believes *Henricks* and *Rush* better able now to pay or secure the debt than they were when the mortgage was executed.

*Rush*, in his answer, states that he authorized *Henricks* to fill up the blank in the mortgage with a description of lands as follows, and of no other, viz., the N. half of the S. E. quarter, and the N. half of the S. W. quarter, òf section 35, township 36 N. range 2 E.; also, 11 acres off the E. end of the N. half of the S. E. quarter of section 34, township 36 N. range 2 E., and east of the *Michigan* road; also, the S. W. quarter of section 10, township 37 N. range 2 E. He states that *Henricks* never told him that he or *Coquillard* had agreed with the complainant or his agent to have mortgaged any particular lands whatever; that he has no knowledge, information, or belief, as to what lands were proposed by *Coquillard* to be mortgaged to the complainant, nor whether *Coquillard* ever proposed or promised that there should be mortgaged to the complainant any lands whatever to secure the debt, as in the bill alleged. He says further, that he and *Henricks* were able, when the mortgage was executed, to secure the debt, and are still able to do so.

The answer of *Henricks* is on file, but it does not vary the case.

There were several depositions read at the hearing, but it is not deemed necessary to notice them particularly.

The Circuit Court decreed in favour of the complainant.

This bill is founded, 1st, on a debt due to the complainant by *Henricks* and *Rush*,—2dly, on an alleged agreement of *Coquillard* with the complainant's agent, in consideration of time to be given for payment of said debt, to cause the debt to be secured by a mortgage on lands of *Rush*, which the complainant says he cannot describe with certainty,—and, 3dly, on an alleged assent to said agreement expressed by *Rush* to *Henricks*, and an authority thereupon given by the former to the latter to fill up a blank in a mortgage, executed

to the complainant by *Rush*, with a description of the lands which *Coquillard* had agreed should be mortgaged.

The existence of the debt is admitted by the defendants.

In the supplemental answer of *Coquillard*, to the admission of which no objection was made, and which could not, under the circumstances, be objected to, the agreement alleged in the bill to have been made by *Coquillard* is expressly denied; and the agreement was not sufficiently proved to overcome the denial in the answer. The alleged agreement of *Coquillard* as respects him, must, therefore, be laid out of the case.

*Rush*, in his answer, states that he never had any knowledge, information, or belief, of the alleged agreement of *Coquillard*. That is, certainly, a sufficient denial that he ever assented to the agreement, or authorized the blank in the mortgage to be filled up in compliance with it. He could not have assented to an agreement, or taken any step to perform it, if he had no information of its existence. And there is no proof of the charge thus denied.

The grounds therefore of the bill, except the existence of the debt, are not proved; and for the debt the remedy is at law.

It may be proper, however, to notice some other matters connected with the suit.

The bill states that the complainant cannot describe the lands agreed to be mortgaged with certainty, but that from *Coquillard's* representing them to be owned by *Rush*, to be partially improved, and to be situate on the road leading from *South Bend* to *La Porte*, he believes them to be of certain numbers (setting the numbers out). The bill is objectionable for not containing a more particular description of the lands. The statement of the complainant's belief from *Coquillard's* representation is mere surplusage. The answers do not, if any answers could, supply this defect in the bill.

But supposing this objection to the bill not to exist, and that *Coquillard's* agreement had been proved, and was binding, that agreement could create no lien on the lands which, as the bill states, were at the time of the agreement, and when the bill was filed, owned by *Rush*. *Coquillard* had no authority to mortgage those lands; and the only effect of a

breach of his agreement to have them mortgaged, would be to give the complainant a remedy at law against him for damages.

It is contended that *Rush*, by authorizing *Henricks* to fill up the blank in the mortgage by describing certain lands, gave the complainant a lien on those lands. The first answer to that is, that the agreement to give such mortgage is not alleged or proved to have been made by *Rush* with the complainant or his agent; and as it was not executed, it amounts to nothing. Another answer is, that no lien on those lands is claimed by the bill, it not being shown that they are any part of the lands embraced by *Coquillard's* agreement.

There is another objection to the suit as to *Coquillard* and *Rush.* Their alleged agreements are in relation to an interest in lands, and should have been in writing according to the statute of frauds. R. S. 1838, p. 311. It is true, the statute was not pleaded, but as the agreements are denied in the answers, they should have been proved to be in writing. *The Ontario Bank* v. *Root,* 3 Paige, 478. There was no such proof.

It is contended that *Coquillard* is, at all events, liable for not using the necessary diligence, as the complainant's agent, to obtain the mortgage. But the bill does not charge *Coquillard* with being an agent and neglecting his duty as such; on the contrary, the charge is that, for a valuable consideration, he bound himself to procure the mortgage. If, however, this objection did not exist, still the complainant must fail for the want of jurisdiction in the Court. In mercantile agencies, and perhaps others, where the nature of the business requires the agent to keep various accounts of purchases and sales, or of receipts and expenditures, with his principal, he may be called upon by his principal, in chancery, for an account. But the present is a different case. The alleged agency was for a single transaction, in which no such accounts as we have mentioned could arise; and the remedy for a breach is exclusively at law.

It may be further observed, that the bill does not state that a discovery is indispensable to the complainant's recovery against *Coquillard*, and jurisdiction for relief against him,

therefore, cannot be claimed on account of the right to a discovery. Besides, such a statement could not, at any rate, have availed the complainant, as the answer of *Coquillard* denies the agreement. *Russell* v. *Clark's Ex'rs*, 7 Cranch, 69.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. A. Liston* and *J. H. Bradley*, for the plaintiffs.

*J. L. Jernegan* and *J. D. Defrees*, for the defendant.