WILLIAM D. CROOKER & another, in equity, *vs.* WILLIAM M. ROGERS & others.

*Equity—pleading and practice in.*

A suit in equity cannot be maintained by one who has assigned all his interest in the subject-matter of the suit.

The plaintiff's want of equitable interest need not be taken advantage of by demurrer, but the objection may be taken at the hearing on the merits.

When the sole surviving defendant in a bill in equity has no interest in the subject-matter of the suit, the bill will be dismissed.

A bill in equity cannot be maintained when its only object is to recover a sum of money alleged to be in the hands of the defendant, inasmuch as the plaintiff has a plain, adequate, and complete remedy at law therefor, in an action for money had and received.

BILL IN EQUITY, heard on bill, answer, and proof.

The original bill, filed Nov. 25, 1864, brought in the name of William D. Crooker, alone, against William M. Rogers and William Rogers jointly, alleged, substantially,

That on June 12, 1855, W. M. Rogers loaned to W. D. Crooker $12,000, and, on same day, Crooker secured him by bill of sale of one-half of the ship Revenue; that the bill, though absolute in form, was intended solely to secure W. M. Rogers for the money loaned; that Rogers agreed to reconvey on payment of the loan and interest, and for further protection, and not to waive, abrogate, or amend the former agreement, on March 26, 1856, Rogers gave the plaintiff, W. D. Crooker, a written memorandum therein promising to reconvey in case the plaintiff caused to be paid the debt incurred by W. M. Rogers for the money loaned, by the aid of the earnings of said one-half of said ship.

That W. M. Rogers mortgaged said one-half of the ship to Lombard & Co., of Boston, to secure them against their liability by reason of their acceptance of the drafts Rogers drew upon them, whereupon they accepted his drafts for $15,000, and he thereby procured the money so loaned.

That the drafts were renewed once, and a portion of them twice; that the plaintiff furnished W. M. Rogers $8000 to be used in part-payment of the drafts; that after the conveyance of said one-half of the ship, it earned large sums for freights, Rogers receiving one-half thereof, which ought to have been applied to the extinguishment of the loan; that Rogers, with the money furnished by the plaintiff and the earnings, procured a discharge of the mortgage to Lombard & Co., and thereafterwards Rogers sold and conveyed one-half of the ship to strangers.

That long before the sale by Rogers, he had received more than enough from the plaintiffs and earnings of one-half of the ship to pay the debt, and after reimbursement and before sale, the plaintiff requested Rogers to reconvey, but he refused.

That Rogers received, from freights and sale, a large sum of money above that required to pay so much of said debt as was not paid by and with the $8000 furnished by the plaintiff, and that he ought to account for said one-half of the ship.

Prayer, for answer and for auditor to state account, and for a decree of payment of the sum found due.

William M. Rogers deceased Dec. 3, 1864.

After the answer of William Rogers, and of William Rogers, administrator of the estate of W. M. Rogers, viz., on Oct. 24, 1866, the original plaintiff, W. D. Crooker, obtained leave to join William W. Crooker, as a co-plaintiff, and the two plaintiffs joined in an amended bill, substantially alleging, upon the knowledge of W. D. Crooker, and upon the information and belief of W. W. Crooker,

That about June 12, 1855, by virtue of an agreement made with W. D. Crooker, William M. Rogers & Son procured of Lombard & Co. about $12,000 for the use of W. D. Crooker, upon the credit of the firm of the defendants, further secured by a mortgage of one-half of ship Revenue; that W. D. Crooker, by his bill of sale of June 12, 1855, absolute in form, but intended only as security to W. M. Rogers, conveyed one-half of said ship to him; that he agreed that when the money and interest were repaid he would

reconvey the one-half of the ship, and on March 26, 1856, he gave W. D. Crooker a written memorandum to the effect that he would reconvey the one-half of the ship, provided W. D. Crooker should cause the liabilities of W. M. Rogers & Son to Lombard & Co. to be paid and released, and that the earnings of said one-half said ship should be applied toward the liquidation of the debt.

That W. M. Rogers conveyed said one-half said ship to Lombard & Co., to secure them for their liability of the proposed acceptance of the defendants' drafts upon Lombard & Co., whereupon Lombard & Co. did accept drafts for $15,000, thereby procuring the money for the use of W. D. Crooker.

That on Nov. 24, 1867, W. D. Crooker sold and assigned to John Crooker and Henry W. Owen said written agreement, and all his rights, titles, and interests by virtue of the same, and particularly all right, title, and interest in the ship Revenue, and all freight earned and thereafter to become due and payable, and all claim and demand against W. M. Rogers, to the use of them and their assigns; that on Nov. 13, 1865, by virtue of a contract entered into between John Crooker and Henry W. Owen on the one part; William W. Crooker, with the concurrence and assent of W. D. Crooker, and by his procurement made before the original bill of complaint of W. D. Crooker, of the other part, John Crooker and Owen having no further interest in the same, transferred and assigned all their right, title, and interest in the premises, and W. W. Crooker received said assignment to his own certain uses, a more particular statement whereof is unnecessary.

That they believe that William Rogers was a party in interest to the same, and that William D. Crooker, either upon his knowledge or information and belief, and W. W. Crooker, upon information and belief, repeat all the residue of the several allegations contained in the original bill, and the same prayers; and that, so far as the changed state of the title may require, they prayed for a decree in favor of W. W. Crooker.

*Adams*, for the plaintiffs.

*Tallman & Larrabee*, for the defendants.

WALTON, J.   There are several objections to the maintenance of this bill.   In the first place the suit was brought in the name of a party who had ceased to have any interest in it.   The suit was commenced in the name of William D. Crooker, alone.   The proofs show that long before the suit was commenced, he had sold and assigned all his interest in the subject-matter of it to John Crooker and Henry W. Owen.   The assignment to them was Nov. 24, 1857, and the original bill is dated Nov. 25, 1864.   William D. Crooker had, therefore, ceased to have any interest in the subject-matter of the litigation, for more than seven years before this suit was commenced.   Within the rule established in *Haskell* v. *Hilton*, 30 Maine, 419, the bill should have been dismissed for that reason. The principle established in the above case is, that after the assignment of all interest in a chose in action, upon which a claim in equity is founded, the bill must be brought in the name of the assignee ; and that it is not necessary that the assignor be a party ; and that a total want of interest in the plaintiff, in a suit in equity, is fatal to the bill ; and that the objection may be taken by demurrer or at the hearing.

Another objection, to the maintenance of the bill, is that William Rogers, the only surviving defendant, was improperly joined in the suit.   The proofs fail to show that he had any such connection with the transaction which forms the subject-matter of this suit, as would justify making him a party defendant.

Another objection to the maintenance of the bill is, that if the plaintiffs have any remedy,—that is, any right to the money in the hands of William M. Rogers,—they have a plain, adequate, and complete remedy at law, in an action for money had and received.

The case in principle is not unlike that of *Russ* v. *Wilson*, 22 Maine, 207.   The object in that case, as in this, was to recover a sum of money, which it was averred was in the hands of the defendant, and which the plaintiff claimed, in equity and good conscience, belonged to him, and for an account.   The plaintiff claimed that his remedy was in equity, because the case was one of trust. But the court answered that it is not every case of trust that is

cognizable in equity; that trusts embrace a wide field, and that in most cases, a remedy may be sought by a suit at law, and much more appropriately than in equity; that proceedings at law are precise and direct to the object in view, and are simple and expeditious; while the proceedings in equity are latitudinary, multifarious, dilatory, and often vexatious; that various pretenses are often resorted to in order to uphold jurisdiction in equity, but that such pretenses should not be listened to with too much facility; that to yield too inconsiderately to such pretenses, would, in the end, pervert justice, and render legal proceedings deservedly odious. We think these remarks apply with stronger force to the case now under consideration, than to the one then before the court. This is a case where the plaintiff's rights were secured by a written contract. If the defendant violated the contract, the plaintiff's remedy was by a suit at law to recover his damages; or, if the defendants, or either of them, had in their hands money, which in equity and good conscience belonged to the plaintiff, an action for money had and received would have furnished him with an ample, complete, and expeditious remedy. The proofs show no such case of trust, no such case requiring an account or discovery, as to justify the bringing of a bill in equity. *Law* v. *Thorndike*, 20 Pick, 317.

*Bill dismissed with costs.*

APPLETON, C. J.; CUTTING, KENT, BARROWS, and DAN-FORTH, JJ., concurred.