### Dow and others *v.* BERRY and others.

*(Circuit Court, E. D. Wisconsin. October 16, 1883.)*

1. FRAUD—CONVERSION OF TRUST PROPERTY—EFFECT OF CHANGE OF FORM.

It is a general proposition, both at law and in equity, that if the property of a party has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner or *cestui que trust.* No change of the state or form of trust property can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers for valuable

consideration without notice,) any more valid claim in respect to it than they had before such change. This doctrine is applied to implied trusts as well as express, and to personal as well as real property held in trust.

2. SAME—EQUITABLE RELIEF—JURISDICTION OF EQUITY COURTS.

The statutory provision (section 723, Rev. St.) that suits in equity shall not be sustained in either of the courts of the United States in any case where there is a plain, adequate, and complete remedy at law, is declaratory, and does not exclude the courts from any part of the field of equitable remedies; and while it is the duty of a court of equity not to attempt to draw within its cognizance a case where the remedy at law is plain and adequate, yet to apply such rule it must appear that the remedy at law is as complete and efficacious as in equity.

In Equity.

*Jenkins, Elliott & Winkler*, for complainants.

*Finches, Lynde & Miller*, for defendants.

DYER, J.   The bill in this case alleges, in brief, that in August, 1877, the defendant Berry was the agent of complainants, who were manufacturers of threshing-machines in the state of New York, and as such agent held in trust one threshing-machine of the value of $650; that Berry, intending to defraud the complainants, and in violation of his trust, transferred the machine to the defendant Wallace, who at the time knew the same to be the property of complainants; that Wallace and the defendants Greverns and Lawson, who also knew that the original ownership of the machine was not in Berry, conspiring with each other and with Berry to defraud the complainants of the same, sold the machine to a person, and for a sum not known to complainants, but that the sale was for an amount exceeding $500; that the proceeds of such sale, consisting of money and securities, came into the hands of Greverns and Lawson in part, and partly into the hands of the defendant Fuller, who gave no value therefor, and held the same only for Wallace, or other of the defendants; that the proceeds of said sale of right belonged to the complainants; and that they have no adequate remedy at law for the recovery of the same. The prayer of the bill is that each of the defendants may make full discovery of and concerning the premises, and especially of the amount received in money and securities from the sale of the machine, and may be adjudged to surrender and pay over to the complainants the proceeds of such sale.

The defendants Wallace, Greverns, and Lawson and Fuller, demurred to the bill, on the ground that it appeared on the face of the bill that the complainants had an adequate remedy at law. The demurrer was overruled. The defendants Wallace and Fuller then filed' answers.   Neither of the other defendants answered, nor have they appeared in the case otherwise than as stated.   The answer of the defendant Wallace admits that the machine in question was transferred to him by Berry, and that it was received in payment of a precedent debt.   Both of the answering defendants deny all charges of conspiracy and fraud, allege that their connection with the transaction was in good faith, and further submit, as one of their defenses, that the

complainants have an adequate remedy at law, if they have any remedy at all, and are not entitled to relief in equity.

Proofs have been taken on the part of the complainants. No testimony is introduced by the defendants. From the proofs exhibited the following facts appear: In 1877 Berry was the agent of the complainants for the sale of their threshing-machines on commission. In August of that year he had in his possession the machine in question, which was the property of complainants. He was indebted to Wallace, and Wallace sought to obtain from him this machine to apply in part payment of the indebtedness. Berry appears to have been reluctant to thus make use of the machine, for the reason that it did not belong to him. Enough is proven on the subject to show that Wallace was, at that time, fully informed of the ownership of the machine, and that Berry had no right to dispose of it. Wallace was, however, urgent in his demand, and finally Berry assented to it. Subsequently, Berry took some steps to prevent Wallace from obtaining the machine, but in Berry's absence, and against the objection of Berry's agent, he took possession of the machine and removed it to a place of deposit under his own control. He then made an arrangement with the defendants Greverns and Lawson by which they were to sell the machine for him, and receive payment for their service out of the proceeds of sale. They took the machine, repaired it, and adding to it some necessary attachments, sold it, receiving in payment cash and securities. At the time of the sale, as the proofs strongly indicate, Greverns and Lawson, in good faith, believed the machine was the rightful property of Wallace, and they appear to have acted in entire good faith in selling it. But before paying over the proceeds to Wallace they learned, or had good reason to believe, that the claim of the complainants to the proceeds was paramount by virtue of their ownership of the machine while it was in the hands of Berry; and they therefore hesitated about paying the proceeds to Wallace, to such extent that Wallace employed Fuller as his attorney to make collection from Greverns and Lawson. Fuller was at the same time the general attorney of the complainants in matters pertaining to the agency of Berry; at least, this is the testimony of one of the complainants, and it is uncontradicted. Upon being threatened with legal proceedings by Fuller, and on the advice of their own attorney, Greverns and Lawson paid over to Fuller the proceeds of the machine, less their own charges, and Fuller delivered the same to Wallace.

The proofs bearing upon Fuller's relation to the transaction lead me to the conclusion that before he made payment to Wallace he knew of the complainants' claim to the proceeds, and that it was by his connivance with Wallace that the complainants were frustrated in their attempt to reach the proceeds while they were in his hands. In fact, the testimony on the point, I think, justifies the conclusion that he was well advised of the superiority of the complainants'

claim to the proceeds over that of Wallace before he made payment to Wallace. The whole transaction, then, was nothing less than a wrongful appropriation of the property of the complainants to pay a debt owing by Berry to Wallace; and upon the evidence it would seem that Berry, Wallace, and Fuller were actively parties to the wrong. The merits of the case are with the complainants, and this was substantially conceded on the argument. The sole defense urged in behalf of Wallace and Fuller is that the complainants' remedy is at law, and not in equity.

As is evident from the bill, the theory upon which the case is supposed to be one of equitable cognizance is that the proceeds of the sale of the machine, like the machine itself, are trust property, and may be pursued as such. At first blush it seemed to the court that the case involved only the collection of a money demand, for a recovery upon which there was adequate remedy at law. But upon consideration it is evident that there are presented several elements of equitable cognizance, namely, fraud, trust, discovery, an avoidance of a multiplicity of suits, and a recovery, at least in part, of the specific proceeds of the property sold. A portion of those proceeds consisted of notes or other securities. The complainants are not seeking to recover the value of the machine as recoverable in an action of trover; nor the price thereof, as in an action for money had and received. They are in pursuit of the specific proceeds, which consist, in part, of securities, claiming that they are trust property, of which they are entitled to have the possession and benefit. Of course, there can be no contention upon the proposition that "whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held, in its new form, liable to the rights of the original owner, or *cestui que trust.* The general proposition which is maintained, both at law and in equity, upon this subject, is, that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers for a valuable consideration, without notice,) any more valid claim in respect to it than they respectively had before such change." 2 Story, Eq. Jur. § 1258. And this doctrine is applied to implied trusts as well as express, and to personal property held in trust as well as to real.

It follows, therefore, that as the machine in question belonged to the complainants; the specific proceeds of the sale thereof were theirs, as between them and any of the defendants. The proceeds came into the hands of the several defendants as trust property. Being charged with the trust, the complainants are entitled to those specific proceeds as against any claim of the defendants. True, they might maintain an action of trover against Wallace; but that would only

give them a judgment for damages equivalent to the value of the machine, and not the specific proceeds. He would also, probably, be liable in an action for money had and received. But that is purely a contract liability, and the judgment would be of the same character of liability, not necessarily taking the place of a recovery of the specific trust property. The complainants are entitled to the notes received on the sale of the machine, and equity would have restrained their transfer upon the facts being shown. Further, the complainants may rightfully claim the different parts of the proceeds of the sale from the different defendants into whose hands they are traced by means of the discovery sought by the bill; and at law this could only be done by a multiplicity of suits. I do not see why the complainants are not entitled to have Greverns and Lawson charged as trustees with the moneys in their hands realized from the sale, and Wallace and Fuller with the notes and moneys Greverns and Lawson delivered over to Fuller. Evidently one of the objects of this suit was to obtain a discovery of the price at which the machine was sold, the character of the proceeds received, into whose hands the specific proceeds had come, and what parts thereof the several parties held. The bill expressly asks a discovery.

The statutory provision (section 723, Rev. St.) that suits in equity shall not be sustained in either of the courts of the United States, in any case where there is a plain, adequate, and complete remedy at law, is declaratory, and does not exclude the courts from any part of the field of equitable remedies. *Bunce* v. *Gallagher,* 5 Blatchf. 481. While it is the duty of a court of equity to be careful not to attempt to draw within its cognizance a case where the remedy at law is plain and adequate, it is equally true that to invoke the rule upon that subject here sought to be applied, it should appear that the remedy at law is as complete and efficacious as in equity. Such is not the case here, for it is not the value of the machine that is sought to be recovered, nor simply the price in money; but the complainants are in pursuit of the specific proceeds, as their property held by the defendants in lieu of the original machine, and in trust.

The learned counsel for the defendants cited upon the argument a number of authorities which he deemed conclusive upon the question involved. *Crooker* v. *Rogers,* 58 Me. 339; *Badger* v. *McNamara,* 123 Mass. 117; *Frue* v. *Loring,* 120 Mass. 507; *Ward* v. *Peck,* 114 Mass. 121; *Appeal of Passyunk Building Ass'n,* 83 Pa. St. 441; *Sessions* v. *Sessions,* 33 Ala. 522; *Bennett* v. *Nichols,* 12 Mich. 22; *Bay City Bridge Co.* v. *Van Etten,* 36 Mich. 210; *Coquillard* v. *Suydam,* 8 Blackf. 24; *Ins. Co.* v. *Bailey,* 13 Wall. 616; and *Grand Chute* v. *Winegar,* 15 Wall. 373.

Giving to the cases referred to their full weight, I still think they do not rule the case at bar, and are reconcilable with such relief as the court may here grant. In *May* v. *Le Claire,* 11 Wall. 235, 236, the court, after stating the remedy at law if property be tortiously taken or converted, says that—

"There are kindred principles in equity jurisprudence, whence, indeed, these rules of the common law seem to have been derived. Where a trustee has abused his trust, * * * the *cestui que trust* has the option to take the original or the substituted property; and if either has passed into the hands of a *bona fide* purchaser without notice, then its value in money. If the trust property comes back into the hands of the trustee, that fact does not affect the rights of the *cestui que trust*. * * * The entire profits belong to the *cestui que trust*, and equity will so mould and apply the remedy as to give them to him."

Here the complainant seeks to possess himself of the specific substituted property.

A decree will be entered in favor of complainants.