No. 13,997.

Fred VonHoven et als. vs. Immanuel Presbyterian Church of New Orleans.

### Syllabus.

Plaintiffs have a standing in court to compel a board of trustees to administer a fund in accordance with the will of the testator who left it to enable the Board to take care of their poor. Courts will interpose their authority as it may be needful to safeguard the fund.

There is higher authority in the church (than that of the trustee of the church) whose privilege and whose duty it is to see that the fund left shall be used as intended by the testator in taking care of the poor of the church. Until that authority chooses to act and establish a condition of things that will ensure a proper expenditure of the fund, it will remain intact *in custodia legis.*

APPEAL from the Civil District Court, Parish of Orleans— *Sommerville, J.*

*Omer Villere* and *Edwin T. Merrick,* for Plaintiffs, Appellants.

*Benjamin Rice Forman,* for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. This suit was brought by plaintiffs who allege that they are members of the Immanuel Presbyterian Church and claim that the funds bequeathed by the late Casper Auch to that church are misapplied and that his will is not executed in accordance with his last will and testament.

Defendants appeared and excepted to the suit on the ground that, plaintiffs not being members of the church, they have no right of action. The court sustained the exception.

There was evidence heard on the trial of the exception to sustain the averment that plaintiffs and their minor children are not members of the church, and that, in consequence, they have no interest in the fund before mentioned and can have no concern in its distribution. During the trial of the issues which came up on exception, testimony was also admitted regarding the management of this fund by the defendant corporation and the question of the distribution also came up on the face of the petition, met as it was by an exception which gives rise to admission, to some extent at least, of facts charged regarding the misapplication of this fund.

The funds were donated by Caspar Auch to the several incorporated religious associations of the City of New Orleans in which religion is taught according to the form of the Government and Book of Discipline of the Presbyterian Church.

The first question which presents itself for our decision is whether plaintiffs have sufficient interest to maintain their suit.

A majority of their number have been recognized as members and were accorded all the rights and privileges of members. The children of some of them were baptized in the church and became its members. We are informed by the record that only communicants received by the Session into the communion of the church in good standing and contributing to its support constitute the electors, and that failure to contribute for six months or more debars a member from the right to vote at any election until all arrears are paid.

It further appears that all children born within the pale of the visible church are members and are to be baptized; they are under the care of the church and subject to its government and discipline and when they arrive at years of discretion they are to exercise the duties of members. We understand that this embraces children born within

the pale of the visible church of parents who are communicants regularly received by the Session.

Before the contention among the members of this church arose, the membership of plaintiffs, except one, was not questioned. He was expelled irregularly, as we understand, and was afterward restored to membership.

It is evident that plaintiffs, or at least several of them, were not prompt to contribute and were perhaps debarred from the right to vote under the act of incorporation to which we have referred. They, none the less, did not thereby lose their membership and were entitled to be restored upon paying their indebtedness to the church, and can be heard in this case in behalf of the poor of the church.

Our learned brother of the District Court evidently bestowed close attention on this case. He heard the witnesses and had good opportunity to form an opinion regarding the weight of the testimony. In his carefully prepared opinion he says, that defendant had concluded itself from questioning the membership of plaintiffs, that "the testimony of witnesses, which sets forth that 'there is a rule of Presbytery which directs that when a member has not been heard from for three years that his name goes to the retired list and that he is no longer a member of the church" seems somewhat too broadly stated.

We infer that defendant has acted upon this rule and that in accordance with the view of its officers, the plaintiffs, in its view, are no longer members although no regular trial has been had.

We are not informed that the rule for the government of the Sessions of the church enables its members, summarily, to dismiss a member without a hearing or trial, and until proof is offered and admitted of such a rule, we are warranted in the conclusion that ex parte proceedings to get rid of delinquent or erring members are void. Jones vs. Nebraska, 7 L. R. A. 325. "The right of membership is a valuable privilege of which no one should be debarred except for adequate cause shown," (Ib.) contradictorily with the member against whom charges are brought.

It occurs to us that defendant has less ground to stand upon than it would have if the suit were on the part of a member to be reinstated as a member of the church. Here the purpose is, as far as possible, to reinstate the amount of a fund and in so far as the action has that end in view, the complainants' right to be heard, we imagine, should not

be denied unless it abundantly appears that plaintiffs are intermed-
dlers in a matter which does not in the least concern them. The
defendant is bound by the following by-law: "The money bequeathed
to this church by Caspar Auch, deceased, shall form a poor fund; the
interest and the revenues therefrom shall be for the benefit of the
poor of this church according to the wishes of the testator. The
capital shall remain intact."

The capital has not remained intact and it does not seem that the
defendant should of its own motion seek to reinstate the fund as far
at least as possible, and that it should be slow in denying to plaintiffs
or any one else whom it has for a long period recognized as fellow-
members and whom it has not regularly expelled, the right to be
heard.

The evidence discloses that the members of the church owed monthly
dues in the sum of twenty-five cents, and when some of the members
declared that they were unable to pay, these dues were collected by
taking from the poor or Casper Auch fund.

The testimony of the clerk of the Session shows:

"Q. Do you mean to say that you have fifty members who pay
twenty-five cents every month?

"A. I don't say that. When they are not able to pay, they don't
pay; they pay when they are able. I know several of them that are
members of the church and are not able to pay, but the church pays
for them out of the poor fund.

"Q. Mr. Ruppert, how many members on that list have you got
whose dues you pay out of the Caspar Auch fund?

"A. I could not say.

"Q. About how many?

"A. Ten or fifteen.

"Q. Does your books show that?

"A. Yes."

After having referred to this testimony, the learned judge of the
District Court directed the clerk of the court to forward a portion of
his opinion to the Presbytery, at Austin, and gave it, as his opinion,
that it becomes the duty of this authority to see that "the legacy in
question be properly administered and that the funds be not misap-
plied," quoting further, from his opinion, "and the courts are open to
them as to the heirs of Mr. Auch, to sue the Immanuel Presbyterian

Church for the restitution of that fund which has been destined by Mr. Auch for the poor, when it is shown that said fund is being diverted into the treasury of the church for general purposes."

We agree with the views of the learned judge and think that it was proper to give notice to the higher authority as directed. Evidently the purpose of the testator was to help the poor in indigent circumstances, but not those who can maintain themselves by their work or business. It was to aid the unfortunate without resources, who are suffering in extreme poverty. They have a right to aid from this fund.

We do not conceive that in order, as far as possible, to protect this fund there is necessity of appointing a receiver in this case.

The court, in the exercise of its equity powers, can, we think, find a temporary remedy. Without the appointment of a receiver the fund can be judicially sequestered and, if need be, placed in the judicial depositary of the court. The sequestration of the fund can be continued until it becomes evident that, through the Presbytery before mentioned, or other lawful church authorities, the fund will be properly administered and expended in accordance with the will.

It is therefore ordered, adjudged and decreed that the judgment appealed from is avoided, annulled and reversed.

It is ordered, adjudged and decreed, that after the trial on the merits, if it be found that the will is not carried out in accordance with its terms and the funds are not properly administered, they be sequestered on order of the court and of its own motion and the parties enjoined until further order of the court, and if needful that it be ordered deposited in the depositary of the court, until such time as it becomes evident that defendant will properly take care of and administer the fund.

The case is remanded to be tried in accordance with the views before expressed.

Rehearing refused.