*R. W. Breckons* for defendant.

---

UNITED CHINESE SOCIETY, BY YONG KWONG TAT, LEE. CHUCK, TOM QUAY, LOO JOE; LEE TAT YAP, LUM TAT KEUNG, YEE YAP, C. K. AI, LEE LAU, CHANG BARK SOON, LUM YIP KEE AND WONG LEONG, ITS TRUSTEES, AND YONG KWONG TAT, LOO JOE, YEE YAP, LAM YAT KEUNG AND C. K. AI *v.* YEE MUN WAI, TONG KAU, WONG HOW, PANG LUM MOW, CHU GEM, HO FON AND GOO KIM FOOK.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. W. L. WHITNEY, JUDGE.

ARGUED JUNE 7, 1915.                    DECIDED JUNE 19, 1915.

ROBERTSON, C.J., WATSON, J., AND CIRCUIT JUDGE ASHFORD
IN PLACE OF QUARLES, J., DISQUALIFIED.

CORPORATIONS—*elections—right to vote.*
    Where, under the by-laws of an incorporated benevolent society, all members in good standing were entitled to vote at an annual

Yong Kwong Tat, et al., v. Yee Mun Wai, et al., 22 Haw. 604.

meeting for the election of trustees, a requirement sought to be imposed by the board of trustees whereby members who could not produce a certificate of membership, or whose names did not appear upon an admittedly incomplete roll book, were required to pay the sum of two dollars in order to vote at such annual election, is illegal, and trustees elected at a meeting where such requirement was enforced and members of the society in good standing were prevented from participating, held not to have been legally elected. Where, thereafter, and on the same day, the members so excluded forced their way into the meeting place and proceeded in an orderly manner to hold a meeting and elect trustees, held that the trustees so elected became the duly elected trustees of the society.

SAME—*meetings—presence of persons not members.*

An election held at a meeting of an incorporated society is not invalid by reason of the presence at the meeting of persons not members, unless it be shown that they voted and that their votes were sufficient to have affected the result.

OPINION OF THE COURT BY ROBERTSON, C. J.

(Circuit Judge Ashford dissenting.)

In a petition for a writ of *quo warranto* the petitioners alleged *inter alia* that the United Chinese Society is a corporation duly chartered under the laws of this Territory, being organized for the purpose of cultivating friendly feeling among the Chinese, and acts of benevolence towards the poor and needy Chinese and those of Chinese descent residing in this Territory; that the property of the corporation is held and controlled by a board of trustees which consists of fifteen members elected for three years, five of such trustees being elected at each annual meeting of the corporation; that a membership fee of two dollars is required to be paid in advance by all persons who join the society; that assessments may be levied on the members by the board of managers for the purpose of raising funds; that every member not in arrears in the payment of assessments is entitled to one vote in the meetings of the society; that a regular annual meeting of the society was convened at its hall in Honolulu on the 29th day of November, 1913, at which more

606    SUPREME COURT OF HAWAII

Yong Kwong Tat, et al., v. Yee Mun Wai, et al., 22 Haw. 604.

than one hundred members attended; that there were also pres-
ent at the meeting a number of persons who were not members
but who insisted on the right to vote as members; that without
proceeding to the election of trustees the meeting adjourned over
until the hour of noon on the 16th day of December following;
that thereafter (on December 1) the board of trustees met and
appointed a committee to examine the books and membership
rolls of the society to ascertain who were members in good stand-
ing and entitled to vote, notice thereof by publication having
been given. Those allegations were either admitted by respond-
ents or proven by evidence in the case. It was also alleged in the
petition that at the hour of noon on said 16th day of December
the society met, pursuant to the adjournment, and there being
many more than a quorum present, the petitioners C. K. Ai,
Lam Yat Keung, Yee Yap, Loo Joe and Yong Kwong Tat
were then and there regularly and duly elected trustees of the
corporation; and that the respondents Yee Mun Wai, Tong
Kau, Wong How and Pang Lum Mow are not trustees of the
corporation, have never been elected as such, and have no right
or title to the said office of trustee, but that they, and each of
them, have wrongfully usurped the office, have assumed to con-
trol the property of the society, and wrongfully and unlawfully
claim title to the office of trustee in the corporation and dispute
the right and title of the said C. K. Ai, Lam Yat Keung, Yee
Yap, Loo Joe and Yong Kwong Tat in and to the office of trus-
tee in the corporation. No objection to the form of the petition
was raised. The respondents, in their answer, in substance, al-
leged a conspiracy on the part of the petitioners and others who
desired to control the affairs of the corporation to fraudulently
control the election of trustees at the meeting of November 29,
and for such purpose procured the adjournment of the meeting
until December 16, and in the meantime, in furtherance of such
purpose, wrongfully and unlawfully registered and issued cer-
tificates of membership in the society to such members as were

JUNE, 1915. 607

Yong Kwong Tat, et al., v. Yee Mun Wai, et al., 22 Haw. 604.

in sympathy with them, and to none other; that in pursuance of such fraudulent design, on the morning of December 16, the petitioners, and their abettors, gathered in the hall of the society, took possession thereof, stationed themselves at the entrance thereto, and refused and prevented entrance to the hall and attendance at the meeting to such members as were not registered and who had not the certificates mentioned, and finally closed and locked the door at the entrance to the hall, and proceeded to hold the meeting and elect trustees; that the persons admitted to the meeting constituted but a small minority of the membership of the society; that admittance was denied to a larger number of members who were there present seeking admission and desirous of voting at the election for trustees of the corporation; that the members of the society who had been denied access to the hall, after waiting at the door and in the street outside, forced their way into the hall by breaking the lock of the door; that there then gathered three hundred and sixty members of the society, duly qualified to vote, who proceeded to hold a meeting at which the respondents Yee Mun Wai, Tong Kau, Wong How, Pang Lum Mow and Chu Gem were duly elected trustees of the corporation; that the society comprises nearly all the adult male Chinese residents in the Territory in its membership; that it has been the custom, never previously departed from, to keep the hall of the society open and accessible to all members from morning till evening; and that the said C. K. Ai, Lam Yat Keung, Yee Yap, Loo Joe and Yong Kwong Tat are not trustees of said society, and that the pretended election under which they claim was illegal and void. The petitioners filed a replication in which the allegations of fraud and conspiracy were denied. The facts set up in the answer were proven at the hearing substantially as alleged, and we deem it immaterial whether the action taken by the petitioners was done pursuant to a conspiracy and with evil intent or whether it was merely arbitrarily done under the belief that it was not unauthorized.

The circuit judge held in favor of the petitioners, and a decree which declared that the five petitioning claimants are each and all duly elected trustees of said corporation and that said Yee Mun Wai, Tong Kau, Wong How and Pang Lum Mow have no right or title to said office, was entered. The respondents appealed.

Passing by some subordinate points which have been discussed in the briefs we will take up the question which involves the validity of the action taken by the board of trustees on December 1, 1913, and followed by the petitioners and their supporters at what may be designated as the first meeting of December 16 whereby the possession of a "certificate of election" was required as a condition precedent to the right to attend and vote at the meeting for the election of trustees. The society was incorporated by charter in 1884; in 1886 and again in 1900 the Chinese quarter of Honolulu was swept by fire whereby, or otherwise, many of the records of the society and the evidence of membership of many of the members were destroyed or lost; the matter of membership in the society seems to be in considerable confusion; in 1908 a new set of by-laws was adopted wherein it was provided (Art. III, Sec. 4) that "all members of this society who shall have subscribed to the by-laws and paid the initiation fee prescribed by the society before the date of the passing of these by-laws and who shall not have been expelled from the society, shall be considered members thereof without further application or the payment of a further fee; but such members shall be subject to these by-laws. Provided, however, that all persons now claiming to be members of this society shall satisfy the board of managers that they are such members." There is some doubt as to whether these by-laws became effective as they were never approved by the minister of the interior in the then government as was required by a provision in the charter, but as that provision was subsequently eliminated and as the amended by-laws, as contended by coun-

sel for the petitioners, seem to have been regarded as in force by the society, we assume that they had become effective. The board of managers consisted of the officers of the society and forty-five other members selected annually by the trustees. That board was separate and distinct from the board of trustees. Under the by-law above quoted it would doubtless have been within the power of the board of managers to provide some reasonable scheme for the ascertainment and enrollment of the membership of the society, but there is no evidence that that body ever took any action looking toward the accomplishment of that end. There is some evidence that in 1909 the board of trustees undertook to register the members for the purposes of the election of that year, but that fact throws little or no light on the present controversy. It appears that at a meeting of the trustees held on December 1, 1913, it was decided that a register of members entitled to vote should be made up for use at the meeting to be held on December 16; the plan, as outlined in the official minutes of the trustees' meeting, was as follows: the time for registering was to be from 10 A. M. to 3 P. M. daily from December 8 to 13, "wherein all those who possess membership certificates of the society are to be requested to come to register * * * and those who have not been registered, though they possess the membership certificates, will not be entitled to vote. * * * Those who have shown their certificates of membership will be given certificates of election by the chairman of registration that they may come to vote on election day, and those who have not must pay $2. per capita for their certificates of membership before their names can be registered and they be given certifictes of election. Certificates of election can be issued to those who have lost their certificates of membership and whose names are then found in the society's membership roll." Lee Lau, one of the trustees, was appointed chairman of registration with power to select assistants for the purpose of effecting the plan, notice of which was given by publication in Chinese news-

papers published in Honolulu. Pursuant thereto Lee Lau issued certificates of election, so called, to 148 applicants therefor upon payment of two dollars each apparently irrespective of whether the applicants claimed prior membership in the society or not. He also issued a number of such certificates to persons exhibiting certificates of membership, and in at least one instance he issued such a certificate to a member of long standing who did not show a certificate of membership but who was personally known to Lee Lau to be a member of the society. In all he registered 301 members. The claim made by the petitioners that the action taken by them on December 16, whereby admittance to the meeting was denied to those who did not have a certificate of election, is based upon the assumed validity of the requirement of registration as above explained. The circuit judge held that the whole procedure was authorized, regular and proper. In this, we think, he erred. Assuming, without deciding, that the board of trustees—as distinguished from the board of managers—had the power to provide for and require the registration or enrollment of members who desired to vote at the annual meeting by some reasonable plan or regulation, it will be seen, on examination, that the plan adopted was unreasonable, discriminatory and in violation of the by-laws. It will be observed that under that plan members in good standing and of indisputable membership were intended to be and were in fact denied admittance to the meeting unless they had procured a "certificate of election," and in order to secure such certificate they were subjected to the payment of a tax of two dollars unless they were able to provide a certificate of membership, or their names appeared on the admittedly incomplete membership roll, or, perhaps, they happened to be personally known as members to Lee Lau, who first became a member of the society on November 28, 1913, being elected a trustee (to fill an unexpired term) at the trustees' meeting on December 1. That was plainly in violation of the provisions of the by-laws to the effect that all members of the society in good standing at the time of the adoption of the amended by-laws

"shall be considered members thereof without further application or payment of a further fee," and that "every member of the society who shall not be in arrears in the payment of assessments * * * shall be entitled to one vote at any annual or special meeting of the society." There was no evidence of any assessment having been levied. The right of members to vote at the meetings flowed not from the possession of a certificate of membership or from the appearance of the member's name upon a roll book of more or less recent compilation, but from the fact of membership in the society. Under the by-laws all members in good standing could insist upon this right "without further application or the payment of a further fee," and the exercise of the right, though subject to regulation by reasonable by-laws, was not to be abridged as to any of such members in the manner attempted and sought to be justified by the petitioners.

We hold that the purported election of the petitioning claimants was illegal and void, and that those persons are not trustees of the corporation.

Counsel for the respondents contend that as the alleged title of the petitioning claimants was set up in the petition and denied in the answer, it became a material issue in the case, the burden of proof as to which was upon the petitioners, and that as the petitioners failed to sustain the averment the court should order the dismissal of the writ without inquiring into the validity of the title of the respondents upon the principle that a petitioner without good title may not recover because of infirmities in the respondent's title. See 32 Cyc. 1460; 17 Enc. Pl. & Pr. 463, 471. In *Canario* v. *Serrao,* 11 Haw. 22, where it was found that the respondents were without title, the court ordered a new election though the petitioners, likewise, were without title. But the point urged here seems not to have been raised in that case. However, we deem it unnecessary to pass upon the point, preferring to rest our decision on the merits of the claim of the respondents.

Counsel for the petitioners contend that the second meeting

of December 16—the one at which the four above named respondents claim to have been elected as trustees—was not a legal meeting and that the election held thereat was a nullity. The reasons assigned for this are that the meeting place was broken into by force; that none of the officers of the society were present; that the records of the society were not there; and that many of the persons present were not members. The contention is not sustained. The time for the meeting had been fixed at twelve o'clock, noon, of the day in question; the respondents and their supporters desired and attempted to attend at the hour stated but were wrongfully excluded from the meeting by the petitioners and their supporters; the respondents and others entered the hall as soon as was practicable under the circumstances, convened the meeting and proceeded in an orderly manner with the election of trustees; that the petitioners and their friends, including the officers of the society, declined to attend and take part in the meeting was not the fault of the respondents, they were not prevented from taking part. Anything that may have savored of irregularity was traceable to the prior arbitrary action of the petitioners, and they are not now in a position to complain of it. That some persons were present at the meeting who were not members of the society should not be held to invalidate the election of the respondents in view of the fact that they were chosen by the unanimous vote of the members present and it not appearing that the presence of strangers in any manner affected the result. "The proceedings at a meeting are not invalid by reason of the presence of persons not stockholders or members, unless it is shown that they voted, and that their votes were necessary to carry the resolution complained of." 3 Clark & Marshall, Private Corporations, p. 1976, citing *Madison Av. Bap. Ch.* v. *Bap. Ch. in Oliver St.,* 2 Abb. Pr. (N. S.) 254. See also *McNeely* v. *Woodruff,* 13 N. J. L. 352; and *Wardens of Christ Ch.* v. *Pope,* 8 Gray 140, 146, where the court said, "Some objection was suggested to the legality of the election

JUNE, 1915. 613

Yong Kwong Tat, et al., v. Yee Mun Wai, et al., 22 Haw. 604.

of those persons upon the ground that illegal votes were received. But there is nothing in the case to show that they affected the result, or that a majority of votes were not cast for those persons without counting such supposed illegal votes." In view of all the circumstances we hold that the respondents Yee Mun Wai, Tong Kau, Wong How and Pang Lum Mow were duly elected as trustees of the society.

The decree appealed from is vacated and set aside, and the case is remanded to the circuit judge with direction to enter a judgment dismissing the writ.

*Lorrin Andrews* and *R. W. Breckons* for petitioners.

*F. W. Milverton* (*Thompson & Milverton* on the brief) for respondents.

### DISSENTING OPINION OF CIRCUIT JUDGE ASHFORD.

I respectfully dissent from the conclusion that the respondents Yee Mun Wai, Tong Kau, Wong How and Pang Lum Mow were legally elected as trustees of the United Chinese Society, at the so called second meeting of December 16, 1913. I cannot persuade myself that the mob which then gathered in the hall of the society, after breaking open the front door with a sledge hammer, constituted, in any just or legal sense, a meeting of the society, authorized to proceed with the election of trustees. For some time before the first meeting convened, at noon, and while that meeting was in progress, those who later broke into and took possession of the hall constituted a disorderly mob, for whose control it became necessary to call in police assistance. There is no plausible claim, even on the part of respondents, that the mob in question was composed, to any considerable extent, of *bona fide* members of the society. The locking of the front door at intervals prior to twelve o'clock noon, was manifestly a prudential course, adopted in order to prevent the mob in question from "rushing" the hall, and illegally capturing the meeting.

It may be conceded that the measures taken by order of the board of trustees, to secure a registration of the membership,

were unreasonably restrictive and discriminatory, even to the extent of invalidating the election of the petitioning claimants, without, by any means, establishing the legality of the pretended "election," held after the mob had broken into the society hall, and proceeded to organize a meeting. But I do not feel that the official title of the petitioning claimants is here involved, and for that reason am willing that so much of the decree of the trial judge as purports to declare their right to office should be reversed. In my opinion, the remainder of the decree should be affirmed.

Other reasons, in great variety, and founded upon the various elements of the controversy, might be adduced in support of my position herein,—but I am no very ardent champion of the utility of dissenting opinions—hence I content myself with the foregoing brief expression of my dissent in the present case.