MASAO NAKAKUNI, SUZOTO YAMADA, HACHIE-MON OKADA, HIDE KAWASAKI, SHIMO IZUTSU AND TSUNE NISHIO *v.* ED TOWSE, COMMISSIONER, RESPONDENT, AND HISAI-CHIRO TANAKA AND JISABURO SHINZAWA, INTERVENING RESPONDENTS.

No. 2357.

SUBMITTED SEPTEMBER 20, 1938.     DECIDED FEBRUARY 6, 1939.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE MATTHEWMAN IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY PETERS, J.

This is a bill in equity to restrain a corporate election of officers. The bill discloses the following facts: The corporation involved (hereinafter indiscriminately referred to as "the corporation" or "mission") is a domestic, private corporation organized to promote religious work and worship based upon the teachings and doctrines of the Shinshiyu sect of Buddhism. It is not organized for private gain or profit and has no shares of stock. Since its organization it has prospered and accumulated property of the approximate value of $6000. Any person, male or female, who believes in the doctrines of the sect of Buddhism and agrees to support the objects and purposes of the mission may be

admitted as a general member. The officers to be elected by the corporation are a chief priest and sixty members of the standing committee as provided by the bylaws of the mission to serve until the next annual meeting of the mission. Under the bylaws the standing committee selects the directors and the latter in turn appoint certain officers, including two treasurers. A general member of the corporation has no power to vote. Only those persons, male or female, whose names are duly enrolled by the secretary of the mission as "regular contributors" to the support of the mission are entitled to vote. The election sought to be enjoined was about to be held pursuant to an order entered in *quo warranto* proceedings pending before a judge of the circuit court of the first circuit. The *quo warranto* proceedings had been instituted to try the titles to office in the corporation claimed to have been usurped, including the office of director. The election at which the defendants in the *quo warranto* proceedings claimed to have been duly elected had been declared void and upon rendering the judgment of ouster, the circuit judge ordered the corporation to proceed to a new appointment. One of the grounds of the illegality of the election was that members of the corporation who were not regular contributing members were permitted to vote at said election. Only four members of the corporation were plaintiffs in the *quo warranto* proceedings. Only the three officers, the titles to office of whom were in question, were made defendants. The corporation itself was not a party. The plaintiffs did not claim the disputed offices for themselves. Nor did they pray that the corporation be ordered to proceed to a new appointment. The respondent commissioner herein was appointed by the judge in the *quo warranto* proceedings to conduct the election ordered. In the order of appointment the commissioner was expressly directed to prepare a roll or list of the present bona fide voting members of the corporation. He reported that the secretary of the corporation had failed

to enroll regular contributing members during the period from July 28, 1934 (the date of the election adjudged to have been illegal), to March 6, 1937 (the date of his appointment), and that of the members of the corporation but 156 were regular contributing members and entitled to vote, listing them by name. The result of the findings of the commissioner was that 118 members of the corporation claiming to be regular contributors to and consequently voting members of the corporation were omitted from the list of bona fide voting members of the corporation entitled to vote at the new election. But five members of the corporation are parties petitioners in the instant case. Four of the petitioners are included in the 118 members excluded from voting and appear as petitioners both in their individual capacity and as representatives of the other excluded members of the corporation similarly situated. Neither they nor the members of the class which they represent, with but one exception, were parties to the *quo warranto* proceedings. One of the petitioners, Masao Nakakuni by name, is included in the commissioner's list of bona fide voting members. He admits the receipt of certain moneys collected by others from members of the mission as regular contributions to the mission and their deposit in a bank in trust for the mission to await the outcome of the *quo warranto* proceedings and the selection of legal and lawfully elected officers of the mission. In this regard he alleges that the statuses of the contributors to said fund as regular contributors of the mission came into question in the *quo warranto* proceedings and were determined adversely to them in said proceedings. As an additional ground for equitable relief the petitioners allege that dissension has arisen among the members of the mission resulting in the formation of two factions, of which they are one; that in the *quo warranto* proceedings the presiding judge held, among other things, that the petitioners and those whom they represent, with the exception of Nakakuni, were not regular contrib-

uting members of the mission, their contributions not having been made to a *de jure* treasurer of the corporation, and hence not entitled to vote at elections of officers thereof and that the members of the opposing faction were regular contributing members to the mission and entitled to vote at elections of officers thereof; that many of the persons whose names have been included by the commissioner in the list of bona fide voting members of the corporation comprise the opposing faction, and the petitioners and those whom they represent, with the exception of Nakakuni, are those who have been excluded from his list of bona fide voting members of the mission; that through threats of the use of force and violence the opposing faction has usurped the possession of the mission, its property, books and records and the petitioners and those whom they represent have been wrongfully and fraudulently prevented from using the mission premises for religious worship or other functions connected with the mission and have been compelled to carry on their meetings and services at the private homes of members; that if the proposed new election is held it will result in the election of a standing committee and the appointment by it of a board of directors representing the opposing faction; that the opposing faction has incurred considerable expenses in the mandamus proceedings and the directors selected by the standing committee to be elected will, unless restrained, reimburse the opposing faction from funds to be secured by the directors by the pledge and hypothecation by them of the property of the mission. The bill concludes with the usual general averments of the absence of a plain, adequate and complete remedy at law, that an injunction will avoid a multiplicity of suits and circuity of action and that the present suit is the only means by which petitioners can prevent irreparable injury and the deprivation of their legal right to vote at the new election.

In compliance with the terms of the temporary restraining order, the new election, as ordered by the circuit judge in the mandamus proceedings, has been indefinitely postponed. The *quo warranto* proceedings are still pending and have not proceeded to final judgment. Demurrers to the bill in the instant case were filed by the respondent commissioner and certain "intervenors." The demurrers were sustained by the circuit judge upon the ground that petitioners' rights were pending before the circuit court at law in the *quo warranto* proceedings and that they had an adequate remedy at law. The petitioners, except Nakakuni and the class they represent, will hereinafter be referred to as the "petitioners."

The determination of petitioners' rights as electors of the corporation is not before the circuit court at law in the *quo warranto* proceedings further than they affected the titles of the defendants in that proceeding to the respective offices claimed by them in the corporation.

Private individuals in this jurisdiction have a right of action in the nature of *quo warranto* to try title to office in a private corporation. (R. L. 1935, §§ 4258-4266.) "Private corporations," as that term is used in the statute, obviously includes private corporations organized for religious purposes. The right of stockholders of a private corporation, title to office in which has come into question, to invoke the provisions of the statutes has been repeatedly recognized by this court. (*Canairo* v. *Serrao,* 11 Haw. 22; *Yong Kwong Tat* v. *Yee Mun Wai,* 22 Haw. 604; *Chinese Society* v. *Yee Yap,* 24 Haw. 377.) Jurisdiction over the statutory action in the nature of *quo warranto* is vested in the circuit judges at chambers. But the action is essentially one at law. (*Jones* v. *McElreath,* 167 Ga. 833, 146 S. E. 734, 736; *State ex inf. Thompson* v. *Bright,* 298 Mo. 335, 250 S. W. 599, 601; *State* v. *Hall,* 228 S. W. [Mo.] 1055, 1057; *People* v. *Albany & Susquehanna R. R. Co.,* 57 N. Y.

161, 171; *Att. Gen'ral* v. *Utica Ins. Co.,* 2 Johns. Ch. [N. Y.] 288, 291.) Title to the office in dispute need not, under the statute, be in the plaintiff to entitle him to bring the action. His interest as a member of the corporation is sufficient. (*Canairo* v. *Serrao, supra*; *Yong Kwong Tat* v. *Yee Mun Wai, supra.*) Where, in an action in the nature of *quo warranto,* the sole question in issue is title to office in a private corporation, ordinarily the only necessary party defendant is the person who, it is alleged, is in possession of and usurps the office in question. (51 C. J., T. Quo Warranto, § 15, p. 341; *State* v. *Kohnke,* 109 La. 838, 33 So. 793, 807; *State* v. *Riordan,* 75 N. J. L. 16, 69 Atl. 494, 496; *Foard* v. *Hall,* 111 N. C. 369, 16 S. E. 420, 422.) The judgments which may be entered in actions in the nature of *quo warranto* are prescribed by sections 4262, 4263 and 4264, R. L. 1935. These sections are quoted in the margin.[1] The judgment of ouster is against the usurper and not against the corporation, office in which he is alleged to have usurped. (*The People* v. *Bartlett,* 6 Wend. 422, 423.) Where the sole question in issue is title to office in a private corporation, the judgment is conclusive only against the parties to the proceedings or their privies. (*Peo-*

---

[1] "Sec. 4262. Judgment on default. If the person to whom the order is directed does not answer within the time allowed, the judge shall declare him not qualified to fill the office of which he performs the duties; shall forbid him to perform them any longer; shall condemn him to pay the costs; and shall direct the corporation to proceed to a new appointment.

"Sec. 4263. Judgment on answer. But if the person to whom the order is directed answers within the time allowed, judgment shall be pronounced upon the answer in a summary manner. After hearing the parties, if the judge who issued the order thinks that the person to whom the mandate was directed has usurped the office which he holds, or that he continues in it unlawfully, judgment shall be rendered against him in the manner provided in the preceding section; otherwise, the petition shall be dismissed with costs to be paid by the applicant.

"Sec. 4264. Judgment according to nature of complaint. In all cases contemplated by sections 4258-4266, judgment shall be given according to the nature of the complaint made; *provided,* however, that in the event of the application being dismissed the attorney general shall not be ordered to pay costs."

*ple ex rel. Gilchrist* v. *Murray,* 73 N. Y. 535, 538; *Modlin* v. *State, ex rel.,* 175 Ind. 511, 94 N. E. 826, 28 Am. & Eng. Ann. Cas. [1913C] 669.) Under the provisions of sections 4262 and 4263, where ouster from office in a private corporation is the subject of the judgment, whether the judgment is on default or on the merits, the court may direct the corporation to proceed to a new appointment. And the additional express authority thereby conferred has been considered sufficient to include "authority to require the performance of all acts preliminary or incidental to the accomplishment of the ultimate object," including the appointment of a commissioner clothed with power and authority to prepare a roll or list of members of the society entitled to vote at the election ordered. (*Chinese Society* v. *Yee Yap, supra.*) Obviously, any new election that may be ordered by the circuit judge must be confined and limited to the election of officers of the corporation made legally necessary by the judgment of ouster.

Sufficient has been said to formulate the conclusion that where, in proceedings in the nature of *quo warranto* to try title to office in a private corporation, the corporate election upon which title to office is predicated is declared void upon the ground that certain members of the corporation who voted at said election were not contributing members of said corporation and hence not qualified as electors, under the bylaws, to vote at said election, the judgment of ouster is not conclusive except as to the parties to the proceedings and their privies; and those members of the corporation, the determination of whose qualifications as electors was adverse, if not parties to the *quo warranto* proceedings, nor in privity with any of the persons who were parties to those proceedings, may subsequently assert their qualifications as electors of the corporation in any legal proceedings to which they may be parties and in which their qualifications as such may come in issue.

Four of the petitioners were not parties to the *quo warranto* proceedings nor in privity with any person who was a party thereto. Hence, the judgment of ouster in the *quo warranto* proceedings is not *res adjudicata* against them as to their alleged disqualifications as regular contributing members of the mission. And they may assert their qualifications as electors of the corporation in the instant proceedings provided the bill shows a case of equitable relief and they have no plain, adequate and complete remedy at law. For it is not alone the general rule in equity but it is expressly provided by statute that jurisdiction in equity may not be invoked where there is a plain, adequate and complete remedy at law. (R. L. 1935, § 4701.)

In our opinion the bill states facts sufficient to entitle petitioners to equitable relief.

In the absence of statutory, charter or bylaw restrictions the right to vote at elections of directors or officers of a corporation organized for profit is ordinarily an incident to ownership of shares of stock of the corporation and to deprive a stockholder of the right to vote at such elections is to deprive him of an essential attribute of his property, which is not permissible. Moreover, the threatened deprivation of the incidental right of ownership of stock of a private business corporation to vote at elections of directors or officers of the corporation creates remedial rights as between the aggrieved stockholder on the one hand and the corporation or its officers and agents on the other. In private corporations organized for religious purposes, however, where its members have no beneficial ownership of nor personal or private interest in the property of the corporation, the rights of members to vote for officers and directors of the corporation depend entirely upon the statutory, charter or bylaw provisions of their organization. If electors, the remedial rights, however, of the aggrieved electors are the same.

The rules generally governing meetings of stockholders of commercial corporations apply to meetings of members of incorporated religious societies. (2 Thompson, Corporations [3d ed.], § 931, pp. 295, 296; *People* v. *African Wesleyan M. E. Church,* 141 N. Y. S. 394, 396; *Vargo* v. *Vajo,* 76 N. J. Eq. 161, 73 Atl. 644, 647.) Section 6738 provides that at any meeting of any corporation it shall be lawful for the members in the transaction of business to vote either in person or by proxy. While members of an incorporated religious society are not stockholders in the technical sense, yet under statutory or individual organic laws or rules usually obtaining they are members of the society in the sense that stockholders are members of a business corporation in respect to elections of officers and directors of the society. (54 C. J., T. Religious Societies, § 38, p. 22; *The State* v. *Crowell,* 9 N. J. L. 390, 411; *Wiswell* v. *The First Congregational Church,* 14 Ohio St. 31; *Keith* v. *Howard,* 24 Pick. 292, 294.) The local statutes under which religious societies may incorporate are silent as to the qualifications of members as electors. The charter of the mission is not before us. The bylaws of the mission, quoted in the margin,[2] prescribe the qualifications of electors. There are two. An elector must be a member and he must also be a regular contributor to the mission. The petitioners allege that they and the members of the class they represent are both. Upon demurrer this allegation must be accepted as true. Hence, the petitioners and the members of the class they represent as members of and as regular contributors to the mission were,

---

[2] *"Section 1. General Members.* Any person, male or female, who believes in the doctrines of the SHINSHIU SECT OF BUDDHISM, and agrees to support the objects and purposes of the Mission may be admitted as a general member. A general member shall have no power to vote.

*"Section 2. Voting Members.* Any person, male or female, whose name is duly enrolled by the Secretary of the Mission as a regular Contributor to the support of the Mission shall become a voting member of the Mission."

under the bylaws of the mission, entitled to vote at elections of the mission for officers and directors thereof. (*The People* v. *Tuthill*, 31 N. Y. 550, 559.) And this right includes the right to vote at an election ordered by the court. An election of officers of a corporation is a corporate function. (2 Fletcher Cyc., Corporations, § 283.) That the new election had been ordered by a court and that the presiding officer thereof is a commissioner appointed by a court as a substitute for those officers of the corporation to whom is committed, by the bylaws, the power to hold elections, is immaterial. It is, nevertheless, a corporate election.

The holding of an election of officers of a business corporation will rarely be enjoined. (32 C. J., T. Injunction, § 380; *Hooe* v. *Hall*, 4 Ohio Circ. 547.) And it is only where an aggrieved stockholder may suffer irreparable injury that equity will interfere. (2 Thompson, Corporations [3d ed.], § 1055; 2 High, Injunctions [2d ed.], § 1230, p. 804; 5 Fletcher Cyc., Corporations, §§ 2071, 2072; 32 C. J., T. Injunctions, § 377, p. 239; *Granite Brick Co.* v. *Titus*, 226 Fed. 557, 566; *Brown* v. *Pacific Mail Steamship Co.*, 4 Fed. Cas. [No. 2025], pp. 420, 423; *Supreme Lodge* v. *Simering*, 88 Md. 276, 40 Atl. 723, 725, 71 Am. St. Rep. 409.)

But the bill discloses, as a concomitant to the interference with the legal right of the petitioners to vote at the new election of officers of the corporation, the invasion of the equitable right of the petitioners to enforce the trust with which the property of the corporation is impressed and to prevent its diversion directly or indirectly from the purposes for which it was organized. We refer specifically to the alleged interference with the use by the petitioners of such of the mission property as is devoted to church purposes, the deprivation of the petitioners' right of access to the books and records of the trust and the threatened

diversion of the proceeds of the pledge or hypothecation of the property of the mission. Enforcement of a trust for religious purposes and the prevention of its misuse or abuse are within the exclusive jurisdiction of equity.

The jurisdiction of equity to supervise and control a trust for religious purposes is well-settled. Title to the mission property is in the mission. (*People* v. *Braucher*, 258 Ill. 604, 101 N. E. 944, 946.) The corporate organization of the mission impresses its property with a trust for religious purposes. (*St. Michael's etc. Ch.* v. *St. Michael's etc. Ch.*, 288 Mass. 258, 192 N. E. 628, 630.) There are cases which hold that corporations organized for religious purposes and not for profit are public charities. (*People* v. *Braucher, supra*; *McNeilly* v. *First Presbyterian Church*, 243 Mass. 331, 137 N. E. 691, 694.) Nothing appearing to the contrary, it will be presumed that the property of the mission is held by the mission for the purposes for which it was incorporated. (*McNeilly* v. *First Presbyterian Church, supra*.) Further, it will be presumed upon demurrer that these purposes are lawful and not contrary to public policy. Equity has extensive jurisdiction of uses and trusts for religious purposes not only to uphold them but also to protect them, prevent their misuse or abuse and enforce their execution. (11 C. J., T. Charities, § 73, p. 356; *Mt. Zion Church* v. *Whitmore*, 83 Iowa 138, 49 N. W. 81; *VonHoven* v. *Presbyterian Church*, 108 La. 274; 32 So. 389, 390. See also *People* v. *Braucher, supra*.) A religious corporation has a double aspect, one spiritual and the other temporal, and with regard to the latter, the directors thereof have the same status as the directors of a business corporation and are subject to judicial supervision and control. (*Koch* v. *Estes*, 262 N. Y. S. 23, 26.) When a religious society acquires a legal status by incorporation the courts may deal with it the same as with any other person or *sui juris* entity in respect to its property and with rights of its members considered

as property. (*Brown* v. *Protestant Episcopal Church*, 8 F. [2d] 149, 150.)

Courts of equity afford equitable relief to restrain interference with the right of members of a religious society to use the property of the society devoted to religious purposes. (*Manning* v. *Yeager*, 201 Ala. 599, 79 So. 19.) Similarly to prevent the threatened diversion of the property owned by such society. (*Mt. Zion Church* v. *Whitmore, supra*; *VonHoven* v. *Presbyterian Church, supra*; *Hansel* v. *Purnell*, 1 F.[2d] 266, 269.) Nor is there any question of the right of a member of such society to invoke the jurisdiction of equity upon such grounds. (*VonHoven* v. *Presbyterian Church, supra*.)

The only proceedings at law available to petitioners are proceedings in the nature of *quo warranto* when and if the election ordered by the court shall have been held and finally confirmed by the court. From the possibility that the petitioners may eventually litigate at law in proceedings in the nature of *quo warranto* their right to vote as electors of the corporation, of which they are members, it does not necessarily follow that they must pursue that remedy. If the relief which they could obtain in those proceedings would not be plain, adequate and complete, they are entitled to pursue their remedy in equity. (*Makainai* v. *Lalakea*, 24 Haw. 268.) The statutory provision that suits in equity, including injunction, shall not be sustained in any case where there is a plain, adequate and complete remedy at law is declaratory and does not exclude the circuit judges from any part of the field of equitable remedies. (*Dow* v. *Berry*, 18 Fed. 121, 125.) It seems to be the rule that to oust the jurisdiction in equity the remedy at law must be as efficacious as that in equity. (21 C. J., T. Equity, § 28, p. 52.)

The instant case is not a mere matter of establishing a legal right to vote at a corporate election. It seeks to pro-

tect and enforce the execution of a trust for religious pur-
poses and to prevent its misuse and abuse. While awaiting
the final outcome of the pending *quo warranto* proceedings,
the opposing faction may continue to prevent the petition-
ers from using and enjoying the property of the mission
devoted to religious purposes and continue to force and
compel them to carry on their meetings and services at the
private homes of the members and deprive them of access
to the books and records of the mission. The disposition
of the contributions accepted by Masao Nakakuni will re-
main undecided. The persons to whom contributions may
be legally made will remain in doubt. It was upon the
legal status of those who had accepted contributions on
behalf of the mission that the legality of the election, at
which the defendants in the *quo warranto* proceedings were
elected, primarily depended. The existing confusion will
naturally and necessarily discourage contributions. The
mission depends for its existence upon the contributions of
members. And the decrease in or the discontinuance of
contributions seriously affects the ability of the mission to
perform the religious functions for which it was organized.
Moreover, if representatives of the opposing factions are
elected at the new election ordered by the court, they will,
as alleged, resort to the property of the mission for reim-
bursement of personal expenses incurred by them. The
election, the legality of which came into question in the
*quo warranto* proceedings, was held July 28, 1934. The
*quo warranto* proceedings were instituted a month later.
More than four years of internal strife and dissension has
been the history of the mission and the settlement of its
temporal affairs is not yet in sight. This is not alone a case
in which the remedy at law is not plain, adequate and com-
plete but one in which, if equitable relief is not promptly
granted, the purposes for which the mission is organized
may be submerged if not defeated.

It should be borne in mind that there were subject to

review by this court only those grounds of demurrer passed upon by the court below. Whether or not all necessary parties to the proceedings have been made parties petitioners or respondents has not been presented for determination and we expressly refrain from passing upon any question of misjoinder or nonjoinder of parties.

Consistent with the views herein expressed, the decree appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

*W. C. Moore* for petitioners.

Respondent in person.

*Murakami & Marumoto* for intervening respondents.

Circuit Judge Matthewman: I am obliged to dissent from the foregoing opinion. My views upon the case will be expressed later.

DISSENTING OPINION OF CIRCUIT JUDGE MATTHEWMAN.

It appears that the Shinshiu Kyokai Mission of Hawaii is a local corporation founded for the purpose of promoting "religious work and worship based upon teaching and doctrines of the Shinshiu Sect of Buddhism," that a controversy developed as to who were its proper officers and that, to settle the difficulty, a *quo warranto* proceeding was instituted by six members against three others. In that proceeding a master was appointed to ascertain whether or not an election held upon July 28, 1934, was regular and legal. Following his adverse report, the circuit judge, in accordance with the expression in section 4262, R. L. 1935, "and shall direct the corporation to proceed to a new appointment," and the interpretation placed upon that expression by this court in *Canairo v. Serrao*, 11 Haw. 22, and in *Chinese Society v. Yee Yap*, 24 Haw. 377, 404, 473, appointed Ed Towse, respondent herein, as special commissioner "to call a meeting at the Mission and elect a chief priest and a standing committee of sixty (60) to serve until the next annual meeting of the Mission." To prevent the

commissioner from carrying out the instructions given to him by the circuit judge for whom he was acting, a bill for an injunction against the commissioner was filed by six members of the corporation not parties to the *quo warranto* proceeding. The commissioner was temporarily enjoined. Identical demurrers to the bill by the respondent Towse and by intervening respondents were sustained upon the ground that the petitioners had "an adequate remedy at law." The chief assignment of error now presented for this court's consideration is that based upon the circuit judge's final decree of dismissal of October 27, 1937, made pursuant to his decision sustaining the demurrers.

*In limine* the question arises as to whether or not one of the petitioners for a writ of error, Masao Nakakuni, is entitled to maintain the proceeding now before this court.

Section 3563, concerning writs of error, provides, *inter alia* : "But no order, judgment or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the plaintiff in error."

Paragraph X of the bill for an injunction contains, toward the end of the paragraph, the following: "That none of the petitioners except Masao Nakakuni are permitted to vote under the rulings of either the Master or respondents."

On the face of things, therefore, it appears that Masao Nakakuni was not in a position to complain of the respondent Towse and that his substantial rights were not injuriously affected by the decree of dismissal of the circuit judge. He is not entitled to press this proceeding.

The demurrers to the bill were sustainable, not only for the particular reason given by the circuit judge, that there was an adequate remedy at law, but also upon other grounds of the demurrers, the broad claims, (a) that the bill did not set forth facts sufficient to entitle the petition-

ers therein to the relief sought and, (b) that the petitioners therein were not entitled to maintain the cause against the defendant therein.

The general grounds of the demurrers, although not in express terms passed upon by the circuit judge, will here be considered first.

The allegation in paragraph XIX of the bill for an injunction that the proceeding would "avoid a multiplicity of suits and a circuity of action" and afforded "the only means by which petitioners can prevent an irreparable injury," is a conclusion not supported by specific allegations. "The allegations of irreparable injury to the petitioner and impecuniosity of the respondents, as shown in the recital hereinabove set forth, are general allegations and are not only not supported by specific averments but are in conflict with the facts disclosed by the bill." *Brown* v. *Kaahanui*, 29 Haw. 804, 811.

Even were the conclusion properly supported, it does not follow that equity always will assume jurisdiction to avoid a so-called multiplicity of suits at law.

"Equity will not take jurisdiction on this ground [multiplicity of suits] where there is no necessity for it, as where the legal rules as to joinder of parties and joinder or consolidation of actions permit adequate relief in a single action at law, or where for any other reason there is no necessity for a multiplicity of suits to obtain full relief at law, or where a multiplicity of suits is not threatened, or where by taking jurisdiction a multiplicity of suits would not be avoided." 21 C. J. 73.

"The mere fact that there is a multitude of actions does not in itself constitute multiplicity of actions in such sense that equity will enjoin them." 32 C. J. 89.

"Multiplicity is not synonymous with multitude, and there must be some other ground of jurisdiction besides mere number. The circumstances must be such that the

remedy at law will be regarded as inadequate." *The People* v. *Chiropractors' Ass'n.*, 302 Ill. 228, 231, 134 N. E. 4.

"The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction." *Hale* v. *Allinson*, 188 U. S. 56, 77, 47 L. ed. 380, 392.

"Also, although there is some authority to the contrary; in order to make multiplicity of suits a ground for interposition of a court of equity, more than one suit must have been commenced, or at least about to be begun; and an injunction will not be granted where no action has been brought." 32 C. J. 89.

As subsequently explained in connection with the law in Hawaii, whatever it may be elsewhere, as to *quo warranto,* a multiplicity of suits to determine the status of the corporation officers of the Shinshiu Kyokai Mission of Hawaii is something extremely unlikely to occur and apparently is stated as impending for no other reason than to invoke the interposition of a court of equity. An election of officers once held *under the supervision of a court commissioner* appointed for that purpose in all probability would be conclusive.

Further, as to the bill being lacking in equitable features, it fails to show any effort upon the part of the petitioners to do equity themselves by making their bill broad enough to include all "necessary" parties, as that adjective is technically used in equity pleading. They would have been doing equity themselves by offering to act for all

others similarly situated, and, what certainly should have been done, they should have made the corporation itself a party respondent, it being an absolutely necessary party to any effort to determine the equities sought to be enforced.

While ordinarily a general demurrer for want of equity is insufficient to raise the objection of nonjoinder, that is not so where the bill shows "that the interests of the omitted party are such as to be directly affected by the granting of the relief sought, in which case he is a necessary or indispensable party, for the omission of whom a general demurrer will lie." 21 C. J. 325.

"Necessary or indispensable parties are those without whom the court will not proceed to any decree, even as to the parties before it. This class includes all persons who have an interest in the controversy of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. Accordingly, persons whose interests will necessarily be affected by any decree that can be rendered are necessary and indispensable parties, and the court will not proceed to a decree without them, while parties whose interests will not be affected by the decree sought, although they may have an interest in the subject matter, are not ordinarily necessary parties, although they may sometimes be proper parties under the general rule, in order to avoid a multiplicity of suits." 21 C. J. 273. (*Smythe* v. *Takara,* 26 Haw. 69, 72; *Brown* v. *Kaahanui, supra.*)

It has been said in the majority opinion that there is subject to review in this proceeding upon writ of error "only those grounds of demurrer passed upon by the court below" and that the question of nonjoinder of necessary parties in the equity suit is not before this court for determination. In my opinion, it is of more importance to con-

sider what were the grounds of the demurrers than to consider the reasoning of the circuit judge in sustaining the demurrers. In *Thayer* v. *Lidgate,* 14 Haw. 544, a demurrer to a bill in equity was based upon two grounds, one good and the other bad. The circuit judge ignored the good ground and sustained the demurrer and dismissed the bill upon the one which was bad. This court affirmed the decree of the circuit judge based upon erroneous reasoning for the reason that there was a good ground of demurrer although the circuit judge had not heeded it.

One ground of the demurrers is "that said Bill of Complaint affirmatively shows that the Petitioners are not * * * entitled to maintain the above entitled cause," and that is so. It is almost unheard of, in equity practice, for members of a corporation to ask to have the corporation's affairs investigated and regulated by a court and yet not make the corporation itself a party. The court of equity whose decree of dismissal is now attacked might well have taken the stand that the petitioners were not entitled to maintain the cause because of the bill's fatal defect, instantly apparent, that a "necessary" and *indispensable* party had been omitted. The defect was vital and by this court should be so recognized.

Moreover, it hardly conforms with equity practice to seek to enjoin Towse, not as an individual but as an arm, so to speak, of the circuit judge before whom the *quo warranto* proceeding was and is pending. It was an effort, in effect, to have the equity side of the circuit court place a restriction upon the law side of the same court. That is something quite different from enjoining the private parties in a law action and the propriety of it is at least questionable.

It is unnecessary here to go extensively into the question as to invoking a court of equity to enforce a trust as to the holding of corporation property for religious pur-

poses. It seems that the difficulties of the Shinshiu Kyokai Mission of Hawaii are due entirely to conflicting claims to offices in that corporation and that a final determination in the usual way, that is, in *quo warranto,* of those claims will afford a remedy which is plain and will be fully adequate and complete in the settlement of those difficulties.

The question of main importance here, apart from the nonjoinder in the equity proceeding of a necessary party, is as to whether or not, upon the face of the bill, there is a plain, adequate and complete remedy at law for the petitioners.

*Quo warranto* proceedings are *sui generis.* There is nothing else quite like them. Originally at the old common law they were prosecuted by the attorney general in the name of the sovereign or State. It was the government which was primarily concerned. The statute of Anne provided that in certain cases informations might be filed upon the relation of any person interested, leave of court to do so having been first obtained. The informations were "in the nature of *quo warranto."* In theory, at least, it was still the State which was chiefly concerned. (23 Am. & Eng. Enc. L. [2d ed.] 615.) "The information, with the criminal features thereof discarded, continues to be an available remedy in a number of jurisdictions." 51 C. J. 310.

There further developed, as in Hawaii, statutory proceedings, still in the nature of the original *quo warranto* and termed *"quo warranto,"* wherein there came to be abandoned much, *but not all,* of the basic idea that *quo warranto* is a proceeding in behalf of the government. Under section 4259 it is still the duty of the attorney general to invoke *quo warranto* in certain cases.

That *quo warranto* is not to be treated altogether as a merely private proceeding was in effect announced by this court, in 1897, in *Canairo v. Serrao, supra,* where

the court gave special consideration to the words, "and shall direct the corporation to proceed to a new appointment," appearing in what now is section 4262. (The corporation in that case was not a party to the *quo warranto* proceedings.) It was then held, notwithstanding the fact that the corporation itself was not a party, that "the Circuit Judge had the power to order a new election" (p. 29) and it is a fair inference from that decision that an election once conducted under the auspices of a court commissioner is conclusive upon the rights of every member of the corporation.

That case was followed in 1918 by *Chinese Society* v. *Yee Yap, supra,* Chief Justice Coke writing the opinion of the court. This court then said (p. 380) : "It cannot be doubted that if the judge in the present case possessed authority 'to direct the corporation to proceed to a new appointment' to fill the vacancy existing in the board of trustees he likewise possessed the authority to require an election to be held by the members of the society for that purpose and generally to supervise and govern that election."

When this court then said that the lower court should have its commissioner "supervise and govern that election," it meant, of course, an *effective* election. It was not contemplated that the lower court, through its commissioner, was to do a futile thing, conduct an election which in a few days possibly would be upset by other proceedings in *quo warranto* with different parties litigating concerning the corporation officers. In other words, it was practically held that once the lower court takes hold of a *quo warranto* case involving positions in a corporation, it will fully dispose of the matter however many or few the parties complaining and defending.

Whatever modifications have been made in *quo war-*

*ranto* proceedings, from the time of the old writ of right for the king down to such modern practice as is provided in the statutes of Hawaii, "the substance of the remedy remains the same" (51 C. J. 310), "a proceeding to determine the right to the use or exercise of a franchise or office" (51 C. J. 309), with the government, at least in Hawaii where special statutes have been definitely interpreted by the supreme court of the Territory, still interested in seeing that corporations may be made to function through properly elected officers.

"In the absence of statute creating concurrent remedies, quo warranto is the exclusive remedy in cases where it is appropriate. Thus the right to an office or franchise cannot be collaterally attacked, but must be directly attacked, if at all, by proceedings in quo warranto." 23 Am. & Eng. Enc. L. (2d ed.) 601.

"Inasmuch as quo warranto or proceedings in the nature of quo warranto, or, in some jurisdictions, mandamus, afford an adequate and generally exclusive remedy in such cases, a court of equity will not usually interfere to try the title to a public office, or an office in a corporation, or to try the validity of a corporate organization, or the validity of corporate acts." 21 C. J. 67.

"Thus, subject to the foregoing limitations, quo warranto, or a proceeding in the nature thereof, is the sole and exclusive remedy and method by which the right and title to a public or corporate office may be tried and determined. * * * In the absence of a valid statute conferring equitable jurisdiction, there is no concurrent remedy in equity when quo warranto is available and affords an adequate remedy." 51 C. J. 313.

It has been urged that the statutory provision that suits in equity, including bills for injunction, shall not be sustained in any case where there is a plain, adequate and

complete remedy at law does not exclude the circuit judges from any part of the field of equitable remedies.

In connection with the proposition that equity will not entertain jurisdiction where there is an adequate remedy at law, unless it is shown that there is some feature of the case peculiarly within the province of a court of equity, or unless special jurisdiction has been conferred by statute (21 C. J. 35), there have developed two doctrines: "(1) That the rule is to be taken in a generic sense, as indicating the origin of the jurisdiction and defining generally its grounds and subjects; (2) that it is a constant limit upon the exercise of jurisdiction in the particular case. The former theory is generally adopted. Where the latter or narrower theory prevails the courts in adopting it have generally been influenced by statutes in terms restricting equity powers to cases where there is no adequate remedy at law." 21 C. J. 39.

In *Makainai* v. *Lalakea*, 24 Haw. 268, 271, this court, basing its opinion upon the local statutes, said: "The jurisdiction in equity, which the several circuit judges are authorized to exercise, is limited and set forth in our statutes as shown by the following excerpts therefrom:

'In addition to the jurisdiction in equity otherwise conferred, the several circuit judges shall have original and exclusive jurisdiction of every original process whether by bill, writ, petition or otherwise, in which relief in equity is prayed for, except when a different provision is made' (Sec. 2472 R. L. 1915).

'The several circuit judges may hear and determine in equity, all cases hereinafter mentioned, when the parties have no plain, adequate and complete remedy at the common law, that is to say: * * *

'Suits between copartners, joint tenants and tenants in common, and their legal representatives, with authority to appoint receivers of rents and profits, and apportion

and distribute the same to the discharge of incumbrances and liens on the estates or among the cotenants. * * * Suits upon accounts when the nature of the account is such that it cannot be conveniently and properly adjusted and settled in an action at law. * * * Cases of fraud. * * * And shall have full equity jurisdiction according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate and complete remedy at law' (Sec. 2473 R. L. 1915).

"The gist of these statutory provisions is that the several circuit judges may exercise their equity jurisdiction when and only when the party has no plain, adequate and complete remedy at law, whether it be a case of fraud or otherwise."

The circuit judge was correct in sustaining the demurrers upon the ground that there was an adequate remedy at law. Also, conformably with *Thayer* v. *Lidgate, supra,* this court may well say that the sustaining of the demurrers was likewise warrantable for a reason not mentioned by the circuit judge, but properly presented at the time by the demurrers, that a bill of complaint such as that before him was entitled to scant consideration in a court of equity when the well-established equitable rule as to necessary and indispensable parties had been entirely ignored by those seeking equitable relief.

The decree of dismissal should be affirmed.