## COMMONWEALTH *vs.* CORNELIUS A. ROGERS.

Berkshire.   Sept. 11. — Oct. 13, 1883.   FIELD & W. ALLEN, JJ., absent.

A person, licensed as a common victualler, and to sell intoxicating liquors to be drunk on the premises, may be convicted of keeping a "public bar," within the Pub. Sts. *c.* 100, § 9, *cl.* 5, if he sells and delivers, not in connection with food, intoxicating liquors indiscriminately to such persons as may call for them, over a bar or counter, although there is no public display of the liquors, and the bar is also used for luncheon purposes.

COMPLAINT to the District Court of Southern Berkshire, for keeping and maintaining a common nuisance, to wit, a certain tenement in Great Barrington used for the illegal sale and illegal keeping of intoxicating liquors on May 1, 1883, and on divers other days and times between that day and June 6, 1883. Trial in the Superior Court, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows :

The defendant was duly licensed to carry on the business of a common victualler in and upon the premises complained of, and was also, during the times covered by the complaint, duly licensed to keep and sell intoxicating liquors in and upon said premises, under licenses of the first and fourth classes.*

Witnesses for the government testified that the defendant kept a bar or counter on the premises licensed, which was about breast-high ; that behind it were a looking-glass, canned goods, cigars, empty glasses and empty decanters; that the bar was used for people to take luncheon from, and to drink from ; that

---

* By the Pub. Sts. *c.* 100, § 9, " each license of the first, second, and third classes shall be subject to the further condition that the licensee shall not keep a public bar, and shall hold a license as an innholder or common victualler." By § 10, a license of the first class authorizes the licensee " to sell liquors of any kind, to be drunk on the premises; " and a license of the fourth class authorizes him " to sell liquors of any kind, not to be drunk on the premises."

there were no bottles of liquor in sight, they being kept under the bar; that, when a person wanted to drink, a bottle and a glass were set on the bar, and he helped himself; that there was a beer faucet back of the bar.

The defendant testified as follows: "The premises are upon the second floor, reached by a flight of stairs. I keep my liquors in a cooler under the counter; there are no liquors visible; when called for, I put the liquors on the bar, or sometimes on a table, and sometimes I pass them on a waiter; the lunch counter is where people can eat their luncheon; I keep a large line of canned goods; also, at times, oysters, clam-chowders and fish. I add fruit and a variety from time to time. I have intended to keep closely within the law, and comply with the conditions of my license. I have had no intent to violate the law and believed, as I intended, that in keeping and selling liquors I was acting strictly within the conditions and requirements of my license." Upon cross-examination he testified: "I sell to all respectable persons, except minors, who come into my place; I sell over this bar; behind the bar is a looking-glass, cut-glass empty decanters, with large stoppers, arranged for show in three rows with the tumblers; the old tumblers are arranged in the form of a pyramid; they are not used. I don't know as I can tell how this differs from a bar. My bar is open at both ends; a refrigerator is in one end; I rinse the tumblers underneath in a rinser; everybody who goes in can see the bar; there is a public entrance to this room. I have seen one hundred people there at once, and at this time people up at the bar, say fifteen men drinking at once. The bar is six and three quarters feet wide and twelve feet long; the liquors underneath the bar cannot be seen."

Another witness for the defendant testified that the bar was used as a lunch counter, and as a liquor bar; that he had drunk liquor there over the bar; that there were stools in front of it, and chairs at each end; that the place was open, and there were no obstructions to people going in there; that the bar was public, that is, open to the view of anybody; and that there were no liquors exposed to view upon or behind the bar.

The government contended that, upon the evidence, the defendant was guilty of keeping a public bar, in violation of the

conditions of his license, and that the sales of liquors were consequently illegal, and warranted the jury in finding the defendant guilty of the offence charged in the complaint. The defendant contended that the evidence did not warrant the jury in finding that, during the time charged in the complaint, he kept a public bar within the meaning of the statute; and requested the judge to instruct the jury as follows: "1. To constitute a public bar, the liquors licensed to be sold must be publicly displayed in the bar or room in which the liquors are kept and authorized to be sold. 2. If the liquors authorized to be sold are kept concealed from public observation until called for, and then are taken from their place of deposit and delivered to the customer on what is called a counter or bar, and then the bottle containing the liquors is returned to the place in which it was previously kept, such keeping and delivery of the liquors do not constitute a public bar within the meaning of the law, and such sales and delivery are not illegal sales in consequence of being so sold and delivered."

The judge declined so to instruct the jury, and instructed them as follows: "If the jury should be satisfied beyond a reasonable doubt, upon all the evidence in the case, that the defendant, within the time limited in the complaint, kept a bar or counter, such as has been described by the witnesses, with a rinser and intoxicating liquors in a cooler under the bar or counter; that this bar or counter was kept by the defendant open to the public, so that all respectable people had access to this bar or counter, and were there supplied indiscriminately by the defendant with intoxicating liquors, the same being sold to such as asked therefor by the defendant, and drunk upon the premises, as stated by the witnesses, without at the same time ordering or eating food of any kind; in other words, if the jury were satisfied beyond a reasonable doubt of the truth of the testimony in the case, then they would be justified in finding that the defendant kept a public bar within the meaning of the statute."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*M. Wilcox & H. C. Joyner*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

COLBURN, J. It was doubtless the purpose of the Legislature, in requiring that a license to sell liquors, to be drunk on the premises, shall be subject to the " condition that the licensee shall not keep a public bar, and shall hold a license as an innholder or common victualler," to discourage to some extent the sale of liquor to be drunk on the premises, except in connection with meals or lunches. Pub. Sts. *c.* 100, § 9, *cl.* 5. This consideration is entitled to some weight in determining the meaning of the term " public bar " as used in the statute.

It would certainly be difficult, and probably impossible, to define with absolute precision the meaning of the term " public bar," so as to include everything that would, and exclude everything that would not, constitute such a bar, though under any given state of facts it might not be difficult to determine whether or not they constituted such a bar.

Such a bar must obviously be something at which liquors are sold, to be drunk on the premises; and it is equally obvious that everything at which liquors are so sold is not necessarily such a bar; for the purpose of the license is to authorize such sales, unless made in a certain manner. In a somewhat general way, a public bar may be defined as a counter, table, shelf, or other similar device, designed and used for the purpose of facilitating the sale and delivery of liquors there kept to any one who may apply for them, to be then and there drunk, not in connection with meals, lunches or food. A lunch counter, designed and used for furnishing lunches, would not be such a bar merely because sales of liquor only are sometimes made there.

We do not think the public display of liquors by any means an essential element in determining the question in issue, as contended by the defendant. There was no conflict in the evidence, including that of the defendant himself; and we think it established the fact that the defendant kept a public bar. The defendant's requests for instructions were rightly refused, and we see no objection to the instructions given.

The defendant in his argument contended that, if he did not suppose he was violating the terms of his license, though he was in fact doing so, he was not guilty of the offence charged against him, and that the jury should have been so instructed. As no such question is raised by the bill of exceptions, we have no occasion to consider it. *Exceptions overruled.*