ST. MICHAEL'S UKRAINIAN GREEK CATHOLIC CHURCH OF WOONSOCKET, RHODE ISLAND, *vs.* ST. MICHAEL'S UKRAINIAN ORTHODOX CHURCH OF WOONSOCKET, RHODE ISLAND.

Worcester.    September 24, 1934. — October 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Corporation*, Religious. *Trust*, What constitutes, For religious purposes. *Equity Pleading and Practice*, Master: exceptions to report.

There was no merit in an exception to a finding by a master in a suit in equity on the ground that the finding was shown to be erroneous by certain documents which were in evidence before the master but which were not incorporated in his report; nor in an exception to a finding which, even if it were wrong, was of no consequence; nor in an exception to a finding which the master was justified in making.

Although property of a religious corporation, which was organized for the purpose of being affiliated with a certain religious denomination, was impressed with a trust requiring it to be used for religious purposes, it was not impressed with a trust confining such use exclusively to the promotion of the tenets of that denomination.

Where, after religious services of the corporation above described had been conducted for a number of years according to the tenets of said denomination, a controversy arose among the members, following which adherents of another denomination gained control of the corporation and its services thereafter for several years were conducted according to the tenets of the second denomination, and at the end of that period a second religious corporation was formed, to which the first corporation duly conveyed its property for a nominal consideration, the first corporation, control of which in the meantime had reverted to the adherents of the first denomination, could not maintain a suit in equity against the second corporation for cancellation of the conveyance to the defendant on the ground that the conveyance was a breach of the trust with which the property was impressed.

Upon appeal in a suit in equity from a final decree dismissing the bill without any order as to costs, a rescript of this court ordering that the decree be affirmed "with costs" means that there shall be taxed in the final decree to be entered after rescript the defendant's costs of appeal only.

BILL IN EQUITY, filed in the Superior Court on October 15, 1932, and afterwards amended, described in the opinion.

The suit was referred to a master.    Material findings by

him are stated in the opinion.  By order of *Williams,* J., there were entered an interlocutory decree confirming the master's report, and a final decree dismissing the bill without any order as to costs.  The plaintiff appealed from both decrees.

*P. J. Mulvey,* for the plaintiff.

*S. Silverstein* of Rhode Island, for the defendant.

LUMMUS, J.  Both parties are corporations organized under the law of Rhode Island, and located in that State. The plaintiff was organized in 1909 "for religious worship and for charitable purposes," to hold lands and buildings for such purposes, and to "purchase and hold land to be used for the burial of the members of said society."  Except for the use of the ambiguous word "Catholic" in its name, nothing in its organization indicated or limited its creed.  It is conceded, however, that the purpose of those who organized it was to cause the corporation to become affiliated with the Greek Catholic Church, a Uniat oriental denomination acknowledging the supremacy of the Holy See while retaining its oriental rites.  On January 27, 1914, the corporation obtained and recorded a deed to a parcel of nearly six acres of land in Blackstone, Massachusetts, which was publicly consecrated as a cemetery by a priest of the Greek Catholic Church, the priests of which officiated in the services of the plaintiff corporation until the spring or summer of 1926.

Owing largely to the attempt of the bishop of the Greek Catholic Church in the United States, appointed by the Holy See, to obtain the passage of a bill in the Legislature of Rhode Island incorporating the bishop and the chancellor of the diocese as a corporation authorized to take title to real estate theretofore owned by churches of that denomination, a controversy arose among the members of the plaintiff corporation.  At a meeting of the corporation on July 14, 1926, attended by one hundred twenty-six heads of families belonging to the congregation, a by-law was adopted, putting the business concerns of the corporation, including the appointment and discharge of the pastor, in charge of a board of five trustees elected from the membership.  No by-law had made provision for the calling of meetings, but the custom

had been to give notice of meetings from the pulpit. The meeting of July 14, 1926, could not be called in that way, for no church services had been held for a month before that date. For that reason, notice of the meeting was given by placards displayed in stores frequented by members of the corporation.

The adherents of the bishop in the congregation comprised twenty-five families, while his opponents consisted of two hundred sixty-five families. In August, 1926, the Superior Court of Rhode Island granted a temporary injunction restraining the bishop from interfering with the possession of the property of the plaintiff corporation in Rhode Island, and from interfering with the right of that corporation to appoint a pastor; and on appeal to the Supreme Court that action was affirmed. *St. Michael's Ukrainian Greek Catholic Church* v. *Bohachewsky*, 48 R. I. 234. Immediately afterwards, the opponents of the bishop took possession of all the property of the corporation, including the cemetery in Massachusetts. Thereafter the officiating priests were exclusively those of the Orthodox Eastern Church, otherwise called the Greek Orthodox Church, which does not acknowledge the supremacy of the Holy See. The adherents of the bishop went to another place for worship.

On August 15, 1928, at a meeting of the plaintiff corporation of which notice had been given from the pulpit, at which meeting more than two hundred members attended, it was voted to obtain a charter for a new religious corporation and to transfer to that new corporation for a nominal consideration all the property of the plaintiff. Accordingly, the defendant corporation was formed on December 4, 1928, and later received from the plaintiff a deed of the cemetery in Blackstone which was dated June 31 [*sic*],1929, and was recorded on August 22, 1929. None of the adherents of the bishop were present at the meeting, for none of them had taken any part in the affairs of the plaintiff corporation since 1926. From the beginning of the controversy in April, 1926, none of those adherents were buried in the cemetery, although forty-one members of the opposing party were buried there after that time.

On October 15, 1932, this suit was brought in the name of the plaintiff corporation, the control of which apparently had reverted in some way to the adherents of the bishop, to annul the conveyance of the cemetery. A master reported the facts herein summarized, and found that "the plaintiff in this action [suit], which plaintiff is in reality the . . . group" adhering to the bishop, "and not the corporation itself, has not seasonably attempted to assert whatever rights it now claims in the premises." Exceptions of the plaintiff to the master's report were overruled, the report was confirmed, and the bill was dismissed, without costs, subject to appeal by the plaintiff.

The only material exceptions to the master's report argued by the plaintiff are those numbered 2, 3 and 4. The second exception is to the finding that there never was a vote placing any property of the plaintiff corporation under the control of the bishop. The plaintiff contends that the contrary is shown as to certain property by documents which were in evidence, but which are not incorporated in the master's report. The worthlessness of such an exception was pointed out in *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 483, 484. The third exception attacks the finding that there was due notice of the meeting of July 14, 1926. If that finding be wrong (*Wiggin* v. *Freewill Baptist Church*, 8 Met. 301; *Sabourin* v. *Lippe*, 195 Mass. 470, 479; *First African Methodist Episcopal Society* v. *Worthy*, 232 Mass. 331; *Syrian Antiochean St. George Orthodox Church* v. *Ghize*, 258 Mass. 74, 79, 80; *Sweeney* v. *Morey & Co. Inc.* 279 Mass. 495, 499, 500), it is of no consequence, for the meeting of July 14, 1926, was not the meeting that authorized the conveyance to the defendant. The fourth exception attacks a finding of fact which the master was justified in making. The exceptions were properly overruled, and the report was properly confirmed.

The bill was rightly dismissed. The corporate organization of the plaintiff as a religious society impressed its property with a charitable trust for religious purposes. *Sears* v. *Attorney General*, 193 Mass. 551. *Glaser* v. *Congregation Kehillath Israel*, 263 Mass. 435, 439. But neither that organ-

ization nor the practice of years in following and teaching the doctrines of the Greek Catholic Church created any trust to continue to maintain those doctrines rather than the tenets of some other denomination. *Baker* v. *Fales,* 16 Mass. 488. *Stebbins* v. *Jennings,* 10 Pick. 172. *McNeilly* v. *First Presbyterian Church,* 243 Mass. 331. *Greek Orthodox Community* v. *Malicourtis,* 267 Mass. 472, 480, 481. This was held to be the law of Rhode Island in a case involving the plaintiff corporation. *St. Michael's Ukrainian Greek Catholic Church* v. *Bohachewsky,* 48 R. I. 234. It is not argued that the conveyance of the property to the defendant, another religious corporation, constituted a breach of trust apart from the change of doctrine, which had taken place three years earlier. See *Enos* v. *Church of St. John the Baptist,* 187 Mass. 40, 45; *Syrian Antiochean St. George Orthodox Church* v. *Ghize,* 258 Mass. 74, 81. The meeting at which that conveyance was authorized is not shown to have been held without proper notice. *First African Methodist Episcopal Society* v. *Worthy,* 232 Mass. 331, 335.

We need not consider the question of laches.

The rescript ordered will have the effect of giving the defendant costs of the appeal only. *Carchidi* v. *Kalayjian,* 264 Mass. 230, 231, and cases cited on page 232.

> *Interlocutory decree affirmed.*
> *Final decree affirmed, with costs.*