WELLESLEY COLLEGE *vs.* ATTORNEY GENERAL & another.

Norfolk.    April 5, 1943. — May 24, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Probate Court*, Jurisdiction, Equity proceeding. *Equity Jurisdiction*, Instructions, Interpretation of written instrument. *Trust*, Taxation. *Corporation*, Charitable. *Taxation*, Meal tax. *College. Wellesley College. Words*, "Written instrument."

A Probate Court has no jurisdiction in equity, either under § 6 of G. L. (Ter. Ed.) c. 215, as amended, or under § 6B, inserted in c. 215 by St. 1935, c. 247, to instruct an incorporated college, holding property in trust for the purposes for which it was organized, with reference to its liability and duties under G. L. (Ter. Ed.) c. 64B, inserted by St. 1941, c. 729, § 17, imposing the "meal tax," or to render a declaratory judgment as to such subject matter.

A statute incorporating a charitable corporation is not a "written instrument" within the provision of G. L. (Ter. Ed.) c. 215, § 6, as amended, giving the Probate Courts jurisdiction in equity of matters relative to "trusts created by will or other written instrument."

Determination of the question, whether a trustee is subject to G. L. (Ter. Ed.) c. 64B, inserted by St. 1941, c. 729, § 17, imposing the "meal tax," is not a proper object of a bill in equity by the trustee for instructions.

It *was stated* that Wellesley College, in the circumstances in which it served meals to its students and faculty and to certain groups of outsiders, was not subject to G. L. (Ter. Ed.) c. 64B, inserted by St. 1941, c. 729, § 17, imposing the "meal tax."

PETITION, filed in the Probate Court for the county of Norfolk on December 31, 1941.

A demurrer was overruled by *Reynolds*, J., who then heard the case on its merits and reserved and reported the evidence and all questions of law under G. L. (Ter. Ed.) c. 215, § 13.

*H. S. Davis*, for the petitioner.

*M. A. Westgate*, Assistant Attorney General, for the respondents.

RONAN, J.   This is a petition in equity filed in the Probate Court of Norfolk County by Wellesley College, which was incorporated by St. 1870, c. 85, for the purpose of establishing and maintaining "an institution for the education of youth" and which, pursuant to the said statute and subsequent statutes in amendment thereof, has maintained an institution for the higher education of young women. The petitioner seeks instructions as to whether or not it is subject to the provisions of St. 1941, c. 729, § 17, inserted in G. L. (Ter. Ed.) as c. 64B, which by § 2 imposes a tax on meals amounting to $1 or more that are "furnished at any restaurant, eating house, hotel, drug store, club, resort or other place at which meals or food are regularly served to the public." The respondents are the Attorney General and the commissioner of corporations and taxation. The former filed an answer to the effect that he submitted his rights in the matter to the determination of the court. The commissioner filed a demurrer and an answer. The demurrer was overruled, and the petition was then heard on the merits. The judge, without entering a decree, reported and reserved the suit in accordance with G. L. (Ter. Ed.) c. 215, § 13, for the determination of this court.

The college is a charitable corporation and all its property

is held in trust in furtherance of the purpose for which it was organized. *Harvard College* v. *Attorney General*, 228 Mass. 396. *Amory* v. *Amherst College*, 229 Mass. 374. *Massachusetts Institute of Technology* v. *Attorney General*, 235 Mass. 288. *Trustees of Andover Seminary* v. *Visitors*, 253 Mass. 256. *Judkins* v. *Hyannis Public Library Association*, 302 Mass. 425. It has received large donations by will and otherwise. The donors in many cases have directed that the principal be invested and the income used for the general purposes of the college, while others have limited the application of the income to some particular purpose within the general objects of .the college. Some gifts have been made for the benefit of the college generally and without restrictions or conditions as to the expenditure of the principal or income. Whether the gifts were made for some specified purpose of the college or unconditionally for any general purpose of the college, the petitioner holds the property in trust to carry out the terms and conditions under which it was given and accepted. Where no conditions were imposed by the donor, then it holds and must apply the property in carrying out the charitable object for which it was incorporated. *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280. *Read* v. *Willard Hospital*, 215 Mass. 132. *St. Michael's Ukrainian Greek Catholic Church of Woonsocket* v. *St. Michael's Ukrainian Orthodox Church of Woonsocket*, 288 Mass. 258. Nothing in this case depends on whether the college holds the property conveyed to it as owner or as trustee under a testamentary trust, as in *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, where it became necessary for the appellant to prove it was the owner within G. L. (Ter. Ed.) c. 59, § 5, Third, of the property taxed in order to show that it was entitled to an exemption. ·

All but fifty or sixty students live in the college dormitories. The resident students pay a fixed fee, which includes board, room and tuition. No part of this fee is allocated to any one of these three items. Board and rooms are included in the lump sum contracts made with the resident members of the faculty. Nonresident students may purchase lunch

tickets and obtain luncheon in one of the dormitory dining rooms. The only person, other than students and members of the faculty, who may be served food in any of the dormitory dining rooms is one who has been invited by the head of the house, by a member of the faculty or by a resident student. Arrangements to care for such an invited guest must be made with the head of the dormitory and a slip is made out and paid for by the one who invited the guest. Over a million meals are served in the dormitory dining rooms during the year and very few include meals to guests. The college maintains a place known as the "Well" where sandwiches and carbonated beverages are sold almost entirely to students, to some particular guest of theirs and other people on the campus. An effort is made to confine that service to students. The charge for food and drink served there is comparatively small and is apparently much less than $1. Three apartment houses of the college are occupied by members of the faculty and their families. Persons living in these apartments have the privilege of using the dining room in the Horton House. One must be a member of the Horton Club to dine in the Horton House. There is an annual fee of $3 for membership in this club. Persons who lease apartments for the full year may sublet their apartments during the summer, and the college may sublet apartments for the summer where they have been leased only for the academic year. Those who occupy these apartments for the summer may use the dining room in the Horton House. The college charges them a fixed weekly rate for board. During the summer vacation, various outside groups hold conferences at the college. The association holding the meeting pays a fixed daily rate for meals, room and the use of lecture halls for each person attending the conference. No meals have been served at the college since January 1, 1942, the effective date of the meal tax statute, for which a charge of $1 or more has been made. This is a temporary arrangement adopted by the college pending a determination of the question of the application of the meal tax to it.

The first question presented is whether the Probate Court

had jurisdiction to decide whether the college was subject to the tax. Probate Courts are not courts of general equity jurisdiction but have conferred upon them equity jurisdiction only over such cases and matters as have been named by statutes. *Sullings* v. *Richmond*, 5 Allen, 187. *Abbott* v. *Gaskins*, 181 Mass. 501. *Jones* v. *Jones*, 297 Mass. 198. *Lord* v. *Cummings*, 303 Mass. 457. *MacLennan* v. *Mac-Lennan*, 311 Mass. 709. The petitioner, however, contends that the Probate Court has power to hear and determine the petition by virtue of G. L. (Ter. Ed.) c. 215, § 6, as most recently amended by St. 1939, c. 194, § 2, which, in so far as material, provides that "Probate courts shall have jurisdiction in equity, concurrent with the supreme judicial and superior courts, of all cases and matters relative . . . to trusts created by will or other written instrument." The petition, however, is not based upon any specific trust established by the will of some particular testator. The terms and provisions of no testamentary trust are set forth, and no issue is presented as to the powers and obligations of the college in reference to any such trust. Nothing whatever touching any testamentary trust is involved in the present proceeding. The contention of the petitioner is that it is seeking instructions as to its duties under the trust created by its charter, which was a written instrument. The incorporation of the college brought into being an entity that was eligible to receive and hold property in trust for the accomplishment of the objects for which it was formed. A trustee is one who holds property in trust. Am. Law Inst. Restatement: Trusts, § 3 (3). The creator of a trust is ordinarily the person who conveys his property to another for the benefit of a third person, or to a charitable corporation, or who, without a conveyance, holds the property charged with a trust for the benefit of another by virtue of a declaration of trust made by the owner, or who has made a promise to another as trustee. Scott, Trusts, § 17. The transferee is not usually considered as the creator of a trust. A valid charitable trust may be created where a general charitable intent is manifested by the owner of the property, even though the person or cor-

poration named to receive and administer the trust is incapable of taking the property. Such a trust does not fail for want of a trustee. *Sherman* v. *Shaw*, 243 Mass. 257. *Reilly* v. *McGowan*, 267 Mass. 268. *Kirwin* v. *Attorney General*, 275 Mass. 34. A trust is created when the owner has done enough in reference to his property to start it on its journey of transmission from him to the charitable purpose intended by him. In determining the function of a charitable trust we are more concerned with the conduct of the donor than with that of the transferee. Of course, a grantee might create a trust although the property was conveyed to him without any obligation to hold it in trust, as was the case in *O'Loughlin* v. *Prendergast*, 269 Mass. 41.

Property conveyed unconditionally to a charitable corporation is impressed with a trust for the accomplishment of the corporate purposes, and, if it could be said a trust in accordance with the terms and conditions of the charter was created upon the receipt of the property, then we are brought back to the inquiry whether the charter is a written instrument within the clause, "to trusts created by will or other written instrument," as contained in G. L. (Ter. Ed.) c. 215, § 6, as amended. The words "or other written instrument" were added to Pub. Sts. c. 141, § 27, by St. 1892, c. 116, by inserting them after the words "to trusts created by will," and the statute, as amended, provided that Probate Courts may "hear and determine in equity all matters in relation to trusts created by will or other written instrument not particularly mentioned in this chapter, and shall have jurisdiction over all matters relating to the termination of trusts under wills, deeds, indentures, or other instruments." This provision, so far as it related to the termination of trusts, came from St. 1880, c. 163, which gave the Probate Court original concurrent jurisdiction with this court in reference to the termination of such trusts. "Other instruments" as used in this last mentioned statute and in Pub. Sts. c. 141, § 27, up to the time of its amendment by St. 1892, c. 116, must be interpreted to mean written instruments of the same kind and nature as those specifically enumerated, and to signify an

instrument such as a will, deed or indenture which a testator, settlor or donor executes and employs as the means of creating a trust. *Stetson* v. *Kempton,* 13 Mass. 272. *Brailey* v. *Southborough,* 6 Cush. 141. *Commonwealth* v. *Dejardin,* 126 Mass. 46, 47. *Johnson* v. *Goss,* 128 Mass. 433. *Wall* v. *Platt,* 169 Mass. 398, 406. *Babcock Davis Corp.* v. *Paine,* 240 Mass. 438, 441. *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106, 112.

The purpose of St. 1892, c. 116, was to extend the equity jurisdiction of the Probate Courts over the same classes of trusts as those over which they already had jurisdiction in reference to their termination, and when Pub. Sts. c. 141, § 27, was amended by St. 1892, c. 116, the Probate Courts had equity jurisdiction over matters relating to trusts created by will or other written instrument, and "to the termination of trusts under wills, deeds, indentures, or other instruments." The term instrument in this section before the amendment meant, as we have already said, a document like a will, deed or indenture, and it continued to have the same meaning after the amendment. And the word instrument in the clause "or other written instrument," which was added by the amendment, for the purpose already stated should receive the same meaning as that word already had in the statute prior to the amendment. "Where words are used in one part of a statute in a definite sense it may be presumed, in the absence of a plain intent to the contrary, that they are used in the same sense in other places in the same act." *Gillen's Case,* 215 Mass. 96, 98. *Gagnon's Case,* 228 Mass. 334, 338. *Bay State Street Railway* v. *Woburn,* 232 Mass. 201, 203. *Hood Rubber Co.* v. *Commissioner of Corporations & Taxation,* 268 Mass. 355, 357. *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 336.

We therefore conclude that the words "or other written instrument" as they appear in G. L. (Ter. Ed.) c. 215, § 6, as amended, do not include a statute or the special act by which the petitioner was incorporated.

There is another reason why the petition cannot be maintained. It is true that trustees of a trust may bring a petition for instructions and secure the opinion of the court upon

the validity of the trust, a construction of the instrument creating the trust, and their duties and powers in carrying out the provisions of the trust. *Jackson* v. *Phillips,* 14 Allen, 539. *Minot* v. *Baker,* 147 Mass. 348. *Thorp* v. *Lund,* 227 Mass. 474. *Old Colony Trust Co.* v. *Treasurer & Receiver General,* 243 Mass. 543. *Welch* v. *Brown,* 283 Mass. 467. The essentials for the maintenance of a bill for instructions have been said to be the possession of a fiduciary fund concerning which there is a present duty in reference to the disposition of the principal or income, that there are conflicting claims asserted by those interested in the trust res, and that there is no other remedy open to the trustee if he is to be protected in the performance of his duties and not compelled to proceed at his own risk. *Putnam* v. *Collamore,* 109 Mass. 509. *Wilbur* v. *Maxam,* 133 Mass. 541. *Bullard* v. *Attorney General,* 153 Mass. 249. A trustee, however, is not entitled to instructions concerning all matters connected with the administration of his trust, and the remedy is subject to fairly well established limitations. *Sohier* v. *Burr,* 127 Mass. 221. *Bullard* v. *Chandler,* 149 Mass. 532. *Oldfield* v. *Attorney General,* 219 Mass. 378. *Hill* v. *Moors,* 224 Mass. 163. *Boyden* v. *Stevens,* 285 Mass. 176. *Hull* v. *Adams,* 286 Mass. 329.

This petition merely seeks to settle a controversy between the petitioner and the commissioner. The latter makes no claim under any trust nor contends that any of the trust property is not being properly administered. He asserts no claim in the trust property. He is in no way concerned with any fiduciary character of the college. The liability to the tax depends not upon the capacity in which the petitioner holds its property but upon whether it is engaged in transactions upon which the excise is imposed. Perhaps it should be pointed out that the tax, if imposed, is not a charge upon or payable out of trust funds. The amount of the tax is paid by the purchaser of the food, and, if the petitioner is liable for the tax, the fact that it is required to collect and forward the tax to the commissioner would not be sufficient ground upon which it could base an exemption from the tax even though it may incur additional ex-

pense in keeping records and filing returns. *Pierce Oil Corp.* v. *Hopkins*, 264 U. S. 137. *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86. *Felt & Tarrant Manuf. Co.* v. *Gallagher*, 306 U. S. 62. *Nelson* v. *Sears, Roebuck & Co.* 312 U. S. 359.

All that the commissioner contends is that the college, if it serves meals for which it is paid $1 or more, is required to register and pay the tax provided by G. L. (Ter. Ed.) c. 64B. The petitioner does not challenge the validity of the taxing statute nor pray for an injunction against the commissioner. What the petitioner seeks and all that it seeks is an answer to the question whether the claim of the commissioner is sound. This is not a case where the liability of a fiduciary to pay a tax depends upon a construction of the trust instrument and the determination of the interests that passed thereunder to the beneficiaries. *Pratt* v. *Dean*, 246 Mass. 300, 307. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519. Here, the incidence of the tax is not dependent on the terms of any trust or upon the powers and duties of the trustee. The taxable event is the furnishing of meals to the public in certain circumstances. That the petition cannot be considered as a petition for instructions is settled by *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393.

The Legislature has not conferred any power upon the Probate Courts to determine the liability of a fiduciary to the meal tax, as it has done in reference to the succession tax. G. L. (Ter. Ed.) c. 65, § 30. It is only in exceptional cases that a court of equity will interfere with the assessment and collection of taxes. *Maley* v. *Fairhaven*, 280 Mass. 54. *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Commission*, 301 Mass. 211. Compare *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275.

Petitions for instructions are proceedings in equity and are not on the probate side of the court. They have been referred to as being in the nature of bills of interpleader. *Burroughs* v. *Wellington*, 211 Mass. 494. *Stowell* v. *Ranlett*, 238 Mass. 599. Bills of interpleader by trustees to determine whether they are taxable in one town or in another

have been dismissed. *Macy* v. *Nantucket,* 121 Mass. 351. *Welch* v. *Boston,* 208 Mass. 326. *Greene* v. *Mumford,* 4 R. I. 313. The petitioner is not in the position of one who may interplead contesting claimants and have adjudicated their rights in property held by the petitioner. Here, the petitioner disputes any tax liability to the commissioner. The latter is a stranger with no interest in any trusts held by the petitioner. We do not think that in these circumstances the petitioner has any standing to maintain a petition for instructions.

If the petition could be considered as brought under G. L. (Ter. Ed.) c. 215, § 6B, as inserted by St. 1935, c. 247, for the rendition of a declaratory judgment, the result would be the same. This section does not extend the jurisdiction of the Probate Courts but authorizes the entry of declaratory judgments only in cases and matters over which jurisdiction has been conferred upon these courts. *Geen* v. *Old Colony Trust Co.* 294 Mass. 601. *Jones* v. *Jones,* 297 Mass. 198.

Although, for reasons already discussed, the liability of the college to the meal tax, so called, is not properly presented for decision, we think that, in view of the public interest involved and the uncertainty and confusion now existing among educational institutions and various charitable associations as shown by this record, we ought, as was done in *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, *Trustees of Smith Charities* v. *Northampton,* 10 Allen, 498, and *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303, to express briefly our opinion upon the question that has been argued.

The meal tax law, so called, G. L. (Ter. Ed.) c. 64B, inserted by St. 1941, c. 729, § 17, imposes an excise or "taxable charge" of five per cent of the amount charged for all meals that cost the purchaser $1 or more "furnished at any restaurant, eating house, hotel, drug store, club, resort or other place at which meals or food are regularly served to the public." The taxpayer is defined as the person, which includes a corporation, fiduciaries and receivers, who makes such a taxable charge. Such a taxpayer is required to regis-

ter with the commissioner, who shall then issue a certificate of registration which "shall remain in effect so long as the taxpayer is engaged in the business of serving meals to the public." Each taxpayer must keep records of taxable charges, file a return monthly with the commissioner, and pay the excise for the periods covered by the returns. The commissioner may determine the amount of the tax where the taxpayer has failed to file a return or has filed an incorrect or insufficient return, any time within three years from the date when the return should have been filed. The taxpayer may appeal to the Appellate Tax Board from the decision of the commissioner fixing the amount of the tax, and the decision of the board shall be final. Substantial penalties are prescribed for the failure to register or to file returns seasonably, or for the filing of fraudulent returns.

The taxing statute is entitled "Excise upon Charges for Meals served to the Public," and correctly sets forth the scope of the enactment. It indicates that the excise is levied upon meals served to the public at places that are open and available to those members of the public who have a right to enter and be served with food for which the agreed compensation is to be paid. The description of the places at which the meal is furnished emphasizes the thought that the meal must be served at a restaurant, eating house, hotel, drug store, club, resort, "or other place at which meals or food are regularly served to the public." The college does not maintain any place that will fit the description of any of those places specifically mentioned. The nearest approach to anything mentioned in the taxing statute is the serving of meals in the dining room at the Horton House to certain members of the Horton Club, so called, who move into one of the three apartment houses after the summer vacations begin and leave before the beginning of the academic year. Furnishing food to a comparatively small group of tenants for a short period of time is not serving food to the public within the meaning of the statute. The dining accommodations at the college are not open to the public. They are restricted to a small, well defined number of classes to the members of which they are avail-

able. The maintenance of dining rooms is not conducted as a commercial enterprise, separate and independent of the various other activities of the petitioner, but is conducted as an incidental but necessary undertaking if the college is to continue to function as an educational institution and to have a student body of young women, many of whom reside outside the Commonwealth. The college was not required to register under the taxing statute and to secure a certificate, which was to "remain in effect so long as the taxpayer is engaged in the business of serving meals to the public." It is plain that the college was not engaged in the business of regularly furnishing meals or food to the public. *Commonwealth* v. *Rogers,* 135 Mass. 536. *Commonwealth* v. *Everson,* 140 Mass. 292. *Commonwealth* v. *Quinn,* 164 Mass. 11. *Commonwealth* v. *Meckel,* 221 Mass. 70. *Audubon Country Club* v. *Commonwealth,* 169 Ky. 399. *People* v. *Powell,* 280 Mich. 699. *Delaney* v. *Central Valley Golf Club, Inc.* 28 N. Y. Sup. (2d) 932. *Wellsboro Hotel Company's Appeal,* 336 Penn. St. 171. *Irvine* v. *Commonwealth,* 124 Va. 817. *Cawker* v. *Meyer,* 147 Wis. 320.

*Demurrer sustained.*
*Petition dismissed.*