MONSANTO COMPANY & others [1] *vs.* DEPARTMENT OF
PUBLIC UTILITIES. [2]

Suffolk. February 4, 1988. — June 13, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Public Utilities*, Electric company, Rate structure, Judicial review. *Department of Public Utilities. Administrative Law*, Agency, Substantial evidence.

In a proceeding by customers of an electric company for review of a decision of the Department of Public Utilities accepting the "probability of dispatch" (POD) method of cost allocation proposed by the company, this court concluded that substantial evidence in the departmental proceeding supported the department's adoption of the company's methodology and its rejection of the alternative proposal of one of the plaintiffs; that the department had fulfilled its obligation to act with reasoned consistency; and that it had committed no abuse of discretion or other error of law. [567-569]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 20, 1987.

The case was reported by *Wilkins*, J.

*Alan D. Mandl* for the plaintiffs.

*Suzanne E. Durrell*, Assistant Attorney General (*Nancy Brockway* with her) for Department of Public Utilities.

*Robert L. Dewees, Jr.*, for Western Massachusetts Electric Company, was present but did not argue.

ABRAMS, J. We review, on reservation and report by a single justice of this court, the appeal of Monsanto Company, Kimberly-Clark Corporation, and The Mead Corporation (Mon-

[1] Kimberly-Clark Corporation and The Mead Corporation, interveners in D.P.U. No. 86-280-A. We shall refer to the plaintiffs as "Monsanto."

[2] Western Massachusetts Electric Company filed a motion to intervene in the Supreme Judicial Court for Suffolk County which was allowed. WMEC advised the court that it would not file a brief in this appeal.

santo) from the decision, order, and rulings of the Department of Public Utilities (department) in D.P.U. No. 86-280-A. G. L. c. 25, § 5 (1986 ed.). At issue is the decision of the department to accept the probability of dispatch method (POD) of cost allocation proposed by Western Massachusetts Electric Company (WMEC).

1. *Background*. The department found the following facts. WMEC provides retail electric service to more than 175,000 customers in fifty-nine cities and towns in four western counties in the Commonwealth. It is a wholly-owned subsidiary of Northeast Utilities (NU) and is, along with the Connecticut Light and Power Company (CL&P) and Holyoke Water Power Company (HWP), an operating subsidiary of the NU system.

The operating subsidiaries of NU (WMEC, CL&P, and HWP), as well as the Hartford Electric Light Company and Holyoke Power and Electric Company are bound by the Northeast Utilities G&T Agreement (Agreement), which allocates the expenses and revenues associated with generation and transmission among the operating companies in the NU system. These companies plan, construct, and operate their generation and transmission facilities on a one-system basis, although each owns or has ownership shares in these facilities individually.

On December 17, 1986, WMEC filed with the department tariff schedules of proposed rate changes intended to increase retail base revenues by $23.5 million, effective on January 1, 1987. The department suspended the rate increase until July 1, 1987, in order to permit further investigation of the propriety of the proposed increase and rate design.

The department granted Monsanto's petition to intervene in the proceedings. Similar petitions by other parties also were granted.[3] After twenty-eight days of hearings, the department disallowed the proposed tariffs and ordered WMEC to file new

---

[3] Other interveners in D.P.U. No. 86-280-A were: Attorney General of the Commonwealth; Executive Office of Energy Resources; Conservation Law Foundation and Massachusetts Audubon Society; Boston Edison Company; Massachusetts Mutual Life Insurance Company; the city of Springfield; Hampshire Community Action Commission, Inc.

schedules of rates and charges designed to produce additional gross revenues of only about $12,500,000, approximately one-half the original proposal.

Because the present case is based in part on a 1985 proceeding before the department (D.P.U. No. 85-270), we first discuss a significant aspect of that earlier proceeding. Monsanto Company and Kimberly-Clark Corporation, two of the interveners in this proceeding, had intervened in the earlier proceeding. In D.P.U. No. 86-280-A, the department stated that, in the earlier proceeding, it had "instructed [WMEC] to use the probability of dispatch ('POD') method in preparing cost of service studies for its next rate case." It also had directed WMEC to investigate modifications to the POD method. In the earlier proceeding, the department stated that it recognized that the "Agreement affects [WMEC's] incurrence of capacity costs; therefore, the parties in [WMEC's] next rate case are invited to address whether and how the POD allocator should be modified to reflect this fact." As a result of the department's directive, the POD method and the department's reliance thereon are raised as issues in this appeal.

The department describes the POD method as one which "allocates generating unit capacity costs and energy costs over all hours in which a unit operates." The costs, the department says, are "allocated to customer classes consuming electricity during those hours, in proportion to the amount of energy they use during those hours."

In the present case, WMEC's jurisdictional cost of service study, which allocates total revenue requirements between retail and wholesale customers, was based on a " 'conventional' POD approach." A more limited retail cost of service study, also submitted by WMEC, allocates retail revenue requirements among retail rate classes. The latter study was based on a modification of the conventional POD.

The department found that the modified POD method proposed by WMEC, although it did not reflect the Agreement, did allocate total capital costs, including capitalized energy costs, to all customers who benefited from the generation of various units. The department further found it to be the case that

it is "most equitable to allocate the embedded capitalized energy costs of generating units to all . . . now receiving power from those units." Noting that WMEC's POD method provides such an allocation, the department accepted its use in this case.

2. *Rejection of Monsanto's proposal.* The department's acceptance of WMEC's proposal is the focus of our attention. See *Attorney Gen.* v. *Department of Pub. Utils.*, 392 Mass. 262, 265 n.2 (1984). Nevertheless, throughout its brief, Monsanto asserts that the methodology it presented to the department should have been accepted. Therefore, we comment briefly on the department's rejection of Monsanto's proposal.

Before the department, Monsanto offered the testimony of a utility rate consultant, who stated that WMEC's generation and transmission costs should be allocated based upon its highest annual 2,000 peak hours, the so-called "capped POD." The consultant also suggested an alternative — that allocation be based one third on the POD method, one third on the average and excess, and one third on the existing base rates. With respect to the proposed "capped POD" method, Monsanto's consultant conceded that neither he nor the company had performed the calculations needed to support their conclusions. Because the calculations were not available, the department was justified in ruling that the result of the "capped POD" method could not be used.

In discussing Monsanto's alternative proposal, Monsanto's expert said it was his "educated guess" that the result of the alternative proposal in substance would more accurately reflect the Agreement. The department, however, found that it was difficult to determine any relationship between Monsanto's alternative proposal (one third, one third, one third) and the allocation of costs under the Agreement, and that Monsanto "failed to provide a theoretical justification for [that] allocation method." The department correctly rejected Monsanto's proposal.

3. *Violations of administrative law standards.* Monsanto argues that the department's decision is not supported by substantial evidence. See G. L. c. 30A, § 1 (6) (1986 ed.).[4] Monsanto

---

[4] Monsanto also argues that the department's decision is arbitrary, capricious, or an error of law.

does not argue that WMEC did not support its proposal by substantial evidence. Rather, it argues that the decision is not supported by substantial evidence because it does not reflect the Agreement. Thus, Monsanto concludes the department erred in its selection of the POD as the method of cost allocation. We do not agree.

We reject Monsanto's claim that, as a result of the department's determination that none of the proposed methods reflected the cost incurrence approach of the Agreement, that the POD method does not mirror in any manner how customers cause WMEC to incur costs. Monsanto assumes that the Agreement does in fact reflect cost incurrence. The department, however, found that the allocation method applied by the Agreement "appears to have little relationship to cost incurrence for the NU system." Furthermore, the department said that it was "not possible to identify a single reason or group of customers which caused a utility to build a unit."[5]

Although the department found that the POD method which it accepted for use in this case did not fully reflect the Agreement, the department concluded that it would be "most equitable to allocate the embedded capitalized energy costs of generating units to . . . those . . . now receiving power from those units." The department also found that the POD method did "allocate total capital costs, including capitalized energy costs, to all customers who benefit from the generation of various units." The department also determined that the POD method is representative of how WMEC actually operates. There is no error. The department's findings and conclusions are supported in the evidence and testimony offered by WMEC. "Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [department]." *Medi-Cab of*

---

[5] The department stated that the interveners' position that the department should rely on past planning considerations when allocating embedded cost is neither appropriate nor possible.

*Mass. Bay, Inc.* v. *Rate Setting Comm'n,* 401 Mass. 357, 369 (1987).[6]

4. *Reasoned consistency.* In *Boston Gas Co.* v. *Department of Pub. Utils.,* 367 Mass. 92, 104 (1975),[7] we stated that a party to a proceeding before the department has a right to reasoned consistency in the agency's decisions. Monsanto argues that the department's decision violates this principle. We do not agree. The department stated that "the allocation process should result in an overall level of rates for each class which reflects the costs a company incurs in serving that rate class." The department had stated in D.P.U. No. 85-270 that nearly eighty-six per cent of the embedded capacity cost is dispatched almost every hour, and that it is appropriate for customers taking service in those hours to bear the costs.

We also reject Monsanto's argument that the department arbitrarily changed its standard of proof by inviting modifications[8] to the POD method and later finding those modifications deficient for not "fully" reflecting WMEC's cost incurrence under the Agreement. We reiterate that the department could determine that Monsanto's proposal was not supported by appropriate calculations and that its alternative proposal had no theoretical justification. Thus, the department's decision to reject Monsanto's proposal is not, as argued by Monsanto, a "capricious turnaround."

---

[6] We reject as inappropriate Monsanto's request that, pursuant to *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943), we set forth our view of the scope of the department's discretion in future proceedings involving WMEC. *Wellesley College* applies only if an issue, argued and briefed, is, for some procedural reason, not properly presented for appellate review. It is not a vehicle for obtaining an advisory opinion at the request of a litigant.

[7] We note that in the *Boston Gas* case, the department had approved a plan to retire a plant over a period of ten years. The department allowed the inclusion of the plant in the company's rate base for four years. Thereafter, for the remaining six years, it disapproved that inclusion without finding any facts to warrant a change of position. That fact pattern differs from the facts in this case.

[8] In D.P.U. 85-270, the department invited the parties to address whether and how the POD allocator should be modified to reflect the fact that the Agreement affects WMEC's incurrence of capacity costs.

5. *Conclusion.* We have determined, for purposes of resolving the issues raised by Monsanto, that the department did not abuse its discretion or act arbitrarily or capriciously, that it fulfilled its obligation to act with reasoned consistency, that the record contains substantial evidence for the department's finding that the POD method should be used, and that the department did not commit an error of law. The case is remanded to the county court where a judgment is to be entered affirming the department's decision.

*So ordered.*